UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| v.     ] | No. 05-CR-30042-MLW |
| ] | |
| CESAR CRUZ and   ] | |
| RICARDO DIAZ   ] | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT CESAR CRUZ'S
MOTION TO PROHIBIT REFERENCE TO AN OUTSANDING
WARRANT NOT RELATED TO THIS CASE**

Defendant Cesar Cruz ("CRUZ") has filed a motion in limine to stop the government from eliciting any reference to certain arrest warrants, in matters unrelated to this one, pending against CRUZ during the period underlying the charges in this case. For the reasons discussed below the motion should be denied: certain references to an unrelated arrest warrant are intrinsic to the story the government must tell in its case-in-chief. Omitting that reference would confuse the jury and inappropriately prejudice the government's case. The government intends to carefully tailor the necessary references to minimize prejudice to the defendant.

**Factual Summary**

CRUZ and a co-defendant, Ricardo Diaz ("DIAZ"), are charged with conspiring to distribute cocaine, one count of actual distribution and, as to DIAZ alone, one count of distributing cocaine base. The facts are simple: in or about January 2005, an informant working for the Federal Bureau of Investigation ("FBI") told agents he knew a man named "King Cesar," (later confirmed to be CRUZ) who was involved in drug dealing, was a fugitive on assault charges, and lived at a certain address. On January 5, 2005, the informant, working for the FBI, went to "Cesar's" address, 57 Hollywood Street, Springfield, Massachusetts, to try to buy

cocaine. The informant was wearing a concealed video and audio recorder. The transaction was completed in the apartment (co-defendant DIAZ was present and assisted). After the transaction the agents, using information gleaned from the buy and by comparing images from the video to RMV records, positively identified the person selling the cocaine as CRUZ. Upon running CRUZ's name through various databases, the agents confirmed that there was indeed an outstanding fugitive warrant out of Springfield District Court, based on a sexual assault case charged in Florida.

The next day, January 6, 2005, Massachusetts state troopers and FBI agents returned to CRUZ's residence and arrested him on the outstanding warrant. When the officers arrived DIAZ was in the apartment as well (he was not arrested). On January 7, 2005, two things happened that, beyond the apprehension of CRUZ, the government intends to introduce in its case-in-chief: *First*, DIAZ called the informant to tell him that CRUZ had been arrested, but that the agents hadn't found DIAZ's and CRUZ's drug stash. DIAZ asked the informant if he wanted to buy more drugs, because he needed to raise money for CRUZ's lawyer. *Second*, CRUZ, now in the Hampden County Correctional Center, made a telephone call to an unidentified female which was recorded pursuant to standard jail procedures. During the call CRUZ asked her, using coded references, to make sure drugs and a gun have been removed from the house.

## Argument

**I.    To Avoid Jury Confusion That Would Improperly Prejudice the Government's Case, the Government Needs to Be Able to Make Some Reference to Cruz's Arrest and Incarceration**

At trial some reference to CRUZ's arrest and related incarceration is needed to avoid unfair confusion regarding three important items of evidence:

**(a)** *That law enforcement arrested CRUZ at the same place where the informant bought drugs from him the day before, and that DIAZ was present.*  This information helped the agents positively identify DIAZ, and at trial it corroborates the informant's story that he in fact bought drugs from CRUZ at that place the day before.  Without some reference to arresting CRUZ the jury will wonder just what the police were doing at CRUZ's house on January 6.

**(b)** *That DIAZ called the informant to tell him that the police failed to find their drug stash during the arrest and that DIAZ wanted to sell more drugs to get money for CRUZ's defense.*  DIAZ and CRUZ are charged in Count One with conspiring to distribute cocaine.  DIAZ's statements during this call are strong admissions relating to that count, but the conversation makes no sense if the jury is unaware that police came by the day before and arrested CRUZ.

**(c)** *That CRUZ called people from jail to tell them to get rid of drugs and a gun*.  This is also a strong admission showing CRUZ's involvement with drug dealing.  Without knowing that CRUZ is in jail, however, the jury will wonder how this call was recorded, since it does not involve the informant as a participant and there obviously will be no talk of a wire tap.[1]

All of the above evidence is certainly relevant under Federal Rule of Evidence ("FRE") 401, since it makes "more probable" the fact that CRUZ and DIAZ are drug dealers.  The evidence is also necessary to "complete the story of the crime on trial."  *United States v. D'Alora*, 585 F.2d 16, 20 (1st. Cir. 1978) (citing *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir.

---

[1] Out of an abundance of caution the government filed a notice under Federal Rule of Evidence 404(b) regarding the jail conversation, but the conversation is in fact also intrinsic to the crimes charged, since during the call CRUZ asks the woman to make sure there is no evidence of drugs in the house.  *See, e.g., United States v. Epstein*, 426 F.3d 431, 438-39 (1st Cir. 2005) (affirming trial court decision to not apply Rule 404(b), noting that the rule only excludes evidence extrinsic to crime charged).

1975)). Although CRUZ is of course not on trial for the crime for which he was arrested and jailed on January 6, 2005, the surrounding events and conversations described above render the arrest "inextricably intertwined" with the conduct charged here, and so Rule 404(b) should not apply. Moreover, because of the entanglement of the unrelated warrant with evidence highly probative on the crimes charged here, without some reference to the arrest and jailing there will be a gap in the evidence leading the jury to justifiably wonder what is missing. As the Supreme Court noted in *Old Chief v. United States*,

> People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more can be said than they have heard.

519 U.S. 172, 189 (1997).[2]

In short, the evidence itemized above is highly probative and the government's presentation of it should not be unfairly hindered by completely blocking any reference to why the troopers were in CRUZ's house; why DIAZ was calling the informant right after CRUZ's arrest; or why CRUZ's jailhouse call was recorded and why he was asking someone to make sure certain things (drugs and a gun) were taken care of.

---

[2] *See also United States v. Manning,* 79 F.3d 212, 217-18 (1st Cir. 1996) (admitting, as intrinsic to crime charged, drug paraphernalia seized from defendant's home); *United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991) ("Evidence of an uncharged offense arising out of the same transactions as the offense charged is not extrinsic evidence within the meaning of Rule 404(b).").

**II.    Carefully Limited References to Cruz's Arrest and Incarceration, Combined with a Cautionary Instruction to the Jury, Will Sufficiently Mitigate Any Prejudice to the Defendant**

There is obviously some risk of prejudice to CRUZ if government witnesses refer to an unrelated arrest warrant and detention.  The risk can be sufficiently mitigated by taking certain steps.  First, while a government witness will say that on January 6, 2005, CRUZ was arrested on an unrelated warrant (which is necessary to show that he was not arrested on *this* case on that date), that witness will make clear that the unrelated matter underlying the warrant was ultimately dismissed.[3]  Second, as to the jailhouse phone call, the government will simply elicit that after CRUZ was arrested he made a call from the jail.[4]  Third, the Court should give a cautionary instruction to the jury, making clear that any references to arrests on unrelated matters should not prejudice the jury's assessment of the crimes charged in this case, and does not make more or less likely that those crimes occurred.

                                                        Respectfully submitted,

                                                        MICHAEL J. SULLIVAN
                                                        United States Attorney

                          By:    _____
                                    Andrew Lelling
                                    Sharron Kearney
                                    Assistant U.S. Attorneys

Date:    April 20. 2006

---

[3]   Today the government reviewed an updated print out of CRUZ's criminal record and confirmed that the Florida charges for sexual assault have been dismissed.

[4]   This is necessary at a minimum, because even to authenticate the jail recording the government will be forced to call a custodian from the Hampden County Correctional Center (Sheri Turowski) to describe when and why calls are recorded in the first place.  In so doing it will become clear to the jury that CRUZ was, for some reason and for some period, in jail, otherwise there would be no reason for Ms. Turowski to testify.