UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
UNITED STATES OF AMERICA )
)
      v. )    CRIMINAL NO. 05-30042-MLW
)
CESAR CRUZ )
and )
RICARDO DIAZ )
      Defendants )
_____)

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO GOVERNMENT'S <u>EXPERT WITNESS TESTIMONY</u>

      Now comes the United States of America, by and through the undersigned counsel, and responds to defendant Memorandum in Opposition to Government's Expert Witness Testimony. The government seeks to elicit expert testimony from Special Agent Mark Karangekis regarding issues surrounding narcotics trafficking pursuant to Federal Rule of Evidence 702. In its motion the defense requests that the Court conduct a separate voir dire to establish Agent Karangekis as an expert. This would be an unnecessary practice as the government expects to lay the proper foundation regarding Agent Karangekis' training and experience during the course of his testimony. Furthermore, there is ample precedent, in the First Circuit and elsewhere, for admitting the anticipated opinion testimony of Special Agent Karangekis under either Rule 702, as expert testimony, or under Rule 701, as lay opinion testimony.

### <u>Anticipated Testimony of Special Agent Mark Karangekis</u>

      In a letter dated April 17, 2006, the government provided the defendants with the following notice concerning the anticipated testimony of Agent Karangekis:

      <u>Qualifications</u>

Special Agent Mark Karangekis graduated from Fairfield University (CT) with a B.A. in Political Science in 1988. He then obtained his J.D. in 1991 from Capitol University in Colombus, Ohio. Agent Karangekis graduated from the Federal Bureau of Investigations Academy at Quantico, VA in 1992. Since then, he has been an active FBI Agent assigned to investigate narcotics trafficking. In 1998 he was appointed Coordinator of the North Shore Gang Task Force. Agent Karangekis maintained that title until 2004 at which point he was appointed to his current position as the Coordinator of the Western Massachusetts Gang Task Force. During his fourteen (14) years as an FBI agent, Special Agent Karangekis has both attended and taught several training sessions, sponsored by FBI and others, related to law enforcement, generally, and drug investigations, specifically.

Summary of Anticipated Testimony

Agent Karangekis may be asked to testify regarding the incidence of cocaine distribution in the Springfield, Massachusetts area during the period of the charged conspiracy, as well as the price for, and average purity of, that cocaine. Agent Karangekis may also be asked to testify about drug trafficking "tools of the trade" (e.g., beepers, cell phones, cutting agent, cash, "bundles" and "bags" as packaging methods for heroin). Based on his training and experience, Agent Karangekis is expected to identify some or all of these items as commonly used in the cocaine-trafficking industry specifically, and the drug-trafficking community generally. He is expected to explain that the different terms used for the weight of cocaine, such as "eightball" and common packaging methods in the cocaine trade, and to describe the average size of each.

In addition to the above referenced summary, the government anticipates that Special Agent Karangekis will testify regarding the specifics of his training and experience, including the following: In the course of his law enforcement career, Special Agent Karangekis has spent nearly all of his time investigating drug-trafficking crimes and gang related violence. Special Agent Karangekis has arrested hundreds of individuals for cocaine or crack cocaine-related offenses, has surveilled thousands of narcotics transactions, including hundreds of controlled purchases.

The government also expects that Special Agent Karangekis will testify that he has personally seen and touched cocaine and crack cocaine on thousands of occasions. He also has interviewed or debriefed hundreds of distributors and users of cocaine or crack cocaine. As a result,

Agent Karangekis is very familiar with the appearance of both cocaine and crack cocaine, how it is commonly packaged and transported, how it is prepared and distributed, how it is used, slang terms used by narcotics distributors to describe the quantities of cocaine and crack cocaine, and which quantities of cocaine and crack cocaine are consistent with use and/or distribution. For example, Agent Karangekis, will describe that an "eightball" is slang for an eighth of an ounce of cocaine and will also discuss the common packaging of cocaine and crack cocaine.

<u>Analysis</u>

I.  **Agent Karangekis' Testimony Is Admissible Under Either Rule 702 as Expert Witness Testimony or Under Rule 701 as Lay Opinion Testimony**

   A.  **Rule 702**

The First Circuit has observed that "[t]he line between expert testimony under Fed.R.Evid. 702 . . . and lay opinion testimony under Fed.R.Evid. 701 . . . is not easy to draw. . . ," <u>Colon-Osorio</u>, 360 F.3d at 52-53, and has found it unnecessary to decide whether a law enforcement officer's testimony was properly admitted under Rule 701 or Rule 702 where, as here, the witness qualified as an expert by virtue of his "experience and the 'specialized knowledge' that he had acquired over the years" and the government had given prior notice of his anticipated testimony. <u>Villarman-Oviedo</u>, 325 F.3d at 13.

Expert testimony is admissible under Rule 702 if the witness qualifies as an expert and the proffered testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; <u>United States v. Valle</u>, 72 F.3d 210, 214-15 (1st Cir. 1995).

First, the subject matter of Agent Karangekis' anticipated testimony—generally, the *modus operandi* of drug dealers and users—is frequently the subject of expert testimony by police officers. <u>See, e.g.</u> <u>Valle</u>, 72 F.3d at 214-15 (1st Cir. 1995)(allowing narcotics officer to testify as to dosages,

3

prices, and other characteristics of crack cocaine dealing); United States v. Ladd, 885 F.2d 954, 959 (1st Cir. 1989)(admitting the expert testimony of a police officer/registered pharmacist that the packaging of the drugs and the number of packages were consistent with intent to distribute, rather than with personal use); United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987) (observing that "[i]n a rough-and-ready field such as this, experience is likely the best teacher" and approving of an experienced DEA agent's expert interpretation of drug-trafficking jargon and codes). As the Valle Court noted, this type of testimony is routinely admitted as expert testimony both in the First Circuit and elsewhere. Valle, 72 F.3d at 215 (citing cases); see also United States v. Foster, 939 F.2d 445, 451 n.6 (7th Cir. 1991)("This circuit ...is quite familiar with the use during trial of expert testimony as to the methods used by drug dealers . . . [and] is not alone in its general acceptance of this type of testimony")(citing cases).

Furthermore, Agent Karangekis' testimony will assist the jury to understand the evidence and to determine facts at issue, as required by Rule 702. Fed.R.Evid. 702. An important factual determination in this case will be whether the defendants possessed cocaine and crack cocaine with the intent to distribute it. Agent Karangekis is expected to testify that the amount of drugs sold in this case, namely 3/8 of an ounce of cocaine and 10 grams of crack, are consistent with distribution not personal use.

Thus, Agent Karangekis' clearly relates to facts at issue, and will help the jury understand the relevant practices of drug dealers. The First Circuit has repeatedly accepted this type of expert testimony as helpful to the jury. Valle, 72 F.3d at 215 ("Matters involving dosages, prices, and other particulars endemic to the ingestion and distribution of crack cocaine are beyond the ken of the average juror. Consequently, expert testimony on these subjects is likely to help the jury and, hence,

if sanctioned by the trial judge, is admissible in evidence."); Ladd, 885 F.2d at 959 ("Expert interpretation of drug jargon and practices, supplied by one versed in the business, has often been admitted to assist the trier of fact in drug-trafficking cases"); see United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987)(admitting expert testimony on drug codes since "[l]ay jurors cannot be expected to be familiar with the lexicon of the cocaine community"). Accordingly, the subject matter of Agent Karangekis' testimony is clearly admissible under Rule 702.

It is equally clear that Agent Karangekis qualifies as an expert under Rule 702. He is well versed in the practices of the drug world generally and of drug dealers. Furthermore, a witness does not need specialized academic training to qualify as an expert in such areas ; rather, "street savvy" and practical experience will suffice. Hoffman, 832 F.2d at 1310 ("in a rough-and-ready field such as [narcotics investigation], experience is likely the best teacher"). Moreover, Agent Karangekis' extensive experience compares favorably with that of other law enforcement witnesses whose expert testimony has been approved by the First Circuit in the past. See, e.g. United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002)(citing officer's eight years with the FBI specializing in drug investigations, including twenty-five drug investigations involving the testimony subject); Hoffman, 832 F.2d at 1310 (citing officer's twelve years with the DEA, including hundreds of drug investigations).

Agent Karangekis therefore clearly qualifies as an expert on cocaine and crack cocaine, on drug dealers, and the methods by which drug dealers distribute narcotics. As noted above, Agent Karangekis has arrested hundreds of individuals for narcotic-related offenses and has surveilled thousands of narcotic transactions. Agent Karangekis' professional experience therefore exceeds

the experience accepted by the First Circuit in <u>Rivera-Rosario</u> and in <u>Hoffman</u>.  Accordingly, Agent Karangekis clearly qualifies as an expert under First Circuit case law.

      **B.**      **Rule 701**

If, for any reason, the Court determines that Agent Karangekis' anticipated testimony ought not be admitted under Rule 702, the government submits that it is admissible under Rule 701. Rule 701 allows a lay witness to give opinion testimony if the testimony is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact at issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of rule 702".  Fed.Rule Evid. 701.  The rule, as described in the advisory committee notes, allows testimony derived from particularized knowledge that the witness knows by virtue of personal experience in a position.  Advisory Committee's Notes on Fed.R.Evid. 701 (stating that, for example, a business owner may give lay testimony on the value or projected profits of his business, "because of the particularized knowledge that the witness has by virtue of his or her position").  Here, Agent Karangekis' testimony is nothing more than observations derived from particularized knowledge that he knows by virtue of his personal experience as a narcotics officer.  Agent Karangekis has surveilled thousands of narcotics transactions and debriefed hundreds of narcotics traffickers.  Agent Karangekis will simply supply conclusions deduced in an everyday manner—primarily simple pattern recognition—from those personal experiences.  His testimony is therefore in accordance with Rule 701.

The First Circuit's recent decision in <u>United States v. Ayala-Pizarro</u>, 407 F.3d 25, 29 (1st Cir. 2005), provides compelling authority for the admissibility of Agent Karangekis' anticipated testimony under Rule 701.  There, the defendant was charged with narcotics trafficking and

possession of a firearm in furtherance of drug trafficking. 407 F.3d at 27. The arresting officer testified about the typical operation of drug distribution points, the typical packaging of heroin, the typical use of firearms in connection with drug sales, and about his experience with the particular drug point where the defendant was arrested. Id. While the defendant had objected to the admission of the officer's testimony on the grounds that the government had not given prior notice of expert testimony, the Court of Appeals ruled that the district court had acted correctly in admitting the officer's testimony under Rule 701 "because it was based on 'particularized knowledge that the witness [had] by virtue of his . . . position' as a police officer assigned to patrol the neighborhood." 407 F.3d at 28 (quoting from Fed.R.Evid. 701, advisory committee's note)(footnote omitted). Ayala-Pizarro parallels closely the case at bar. Here, as there, the defendant stands charged with a drug-trafficking offense and the government proposes to offer through a case agent about how drugs are distributed and packaged and the slang terms commonly used by drug traffickers. Ayala-Pizarro, 407 F.3d at 27-8.

The fact that a subject is beyond the competence of the average person does not exclude lay testimony on the matter. United States v. Paiva, 892 F.2d 148, 157 (1st Cir. 1989)(admitting lay opinion identifying cocaine based on the witness' personal experience using cocaine). Indeed, describing the "liberalization" of Rule 701, the First Circuit stated:

> No longer is lay opinion testimony limited to areas within the common knowledge of ordinary persons. Rather, the individual experience and knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge.

Id. Accordingly, the fact that the average person knows little to nothing about the practices of drug dealers or the appearance, behavior and paraphernalia associated with cocaine or crack cocaine use does not bar Agent Karangekis from presenting lay opinion testimony on these subjects. Rather, his

extensive, personal experience and knowledge in the area establishes his competence to testify that the quantity of cocaine and crack cocaine sold by the defendants was consistent with both distribution and personal use; that the term "eightball" is a common slang for an eighth of an ounce of cocaine; and that cocaine and crack cocaine are typically packaged in small baggies.

Indeed, Courts of Appeals have approved the admission of lay opinion testimony on topics that frequently demand specialized knowledge, so long as the witness had adequate personal knowledge for his testimony. See, e.g., United States v. Colon-Osorio, 360 F.3d 48, 53 (1st Cir. 2004)(admitting lay testimony that the gun at issue had traveled in interstate commerce because the witness had a basis in personal experience, including visiting the relevant gun manufacturing plant); United States v. Santana, 342 F.3d 60, 68-69 (1st Cir. 2003)(admitting lay testimony of DEA agent identifying drug as marijuana because the agent's job frequently exposed him to marijuana; United States v. VonWillie, 59 F.3d. 922, 929 (9th Cir. 1995)(admitting officer's testimony on the connection between guns and drugs because it was rationally based on his perceptions in that case and in prior drug investigations and was helpful to jury's determination on 924(c) charge).

Thus, the fact that drug-trafficking practices often have been the subject matter of expert testimony does not bar the use of lay opinion testimony based on personal experience. Narcotics identification, for example, is frequently done via expert testimony. Paiva, 892 F.2d at 157 (citing cases);see also United States v. Rivera Rodriguez, 808 F.2d 886, 888 (1st Cir. 1986) (district court properly admitted expert testimony that a sifter-grinder found in defendant's possession was an instrument that could be used to "cut" cocaine). Nonetheless, the First Circuit has rejected any contention that the frequent use of expert testimony on a particular topic places that topic beyond the realm of lay opinion testimony. Paiva, 892 F.2d at 157 ("the individual experience and

knowledge of a lay witness may establish his or her competence, without qualification as an expert, to express an opinion on a particular subject outside the realm of common knowledge")(citations omitted). Similarly, despite the frequent use of experts in drug identification, the First Circuit in Santana permitted a DEA agent to identify marijuana as a lay witness, because the agent "testified that his job exposed him to marijuana." 342 F.3d at 69. Here, as in Santana, Agent Karangekis will testify that his job frequently exposes him to cocaine and crack cocaine as well as to the practices of its dealers and users.

Thus, there is ample First Circuit authority for admitting Agent Karangekis' anticipated testimony under either Rule 702 or Rule 701 since it is based on his frequent and numerous contacts with drug dealers and users over the course of his extensive law enforcement career. Accordingly, the government request that this Court allow Agent Karangekis to testify as an expert under Rule 702, or in the alternative, at least give his lay opinions regarding narcotics trafficking under Rule 701. Furthermore, provided that the proper foundation is laid at trial, the government requests that Agent Karangekis be permitted to offer his expert opinions relative to his experiences as a narcotics investigator without conducting a preliminary voir dire as suggested by the defendants.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney

By:     *s/ sharron kearney/*
SHARRON KEARNEY
Assistant U.S. Attorney
One Courthouse Way
Boston, MA 02210

Date:   September 22, 2006

9