# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO.  05-30042 MLW
)
CESAR CRUZ and )
RICARDO DIAZ )

## DEFENDANTS' MOTION TO DISMISS,
## OR IN THE ALTERNATIVE
## TO SUPPRESS TESTIMONY OF JULIAN RIOS

NOW come the defendants herein, Cesar Cruz and Ricardo Diaz, and respectfully request that the charges against them in the above captioned indictment be dismissed. In the alternative they request that the testimony of Julian Rios be suppressed.

The defendants state as grounds the following:

1.     The defendants were charged with the following offenses:

1.) 21 U.S.C., § 846, Conspiracy to Possess with Intent to Distribute and Distribution of Cocaine;

2.) 21 U.S.C. § 84(a)(1), Possession with Intent to Distribute and Distribution of Cocaine, and 18 U.S.C., § 2 Aiding and Abetting;

3.) [Diaz only] 21 U.S.C. § 841(a) (1) Possession with Intent to Distribute and Distribution of Cocaine Base.

1

2.    Count One, charging conspiracy, reads as follows:

"From a time unknown to the Grand Jury, but at least by or about January 2005, and continuing thereafter, in Springfield, and elsewhere in the District of Massachusetts (1) Ricardo Diaz and (2) Cesar Cruz the defendants herein, did knowingly and conspire and agree with each other and persons unknown to the Grand Jury, to possess with intent to distribute, and to distribute, a quantity of cocaine hydrochloride, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). All in violation of Title 21, United States Code, section 846."

The Late Disclosure of Exculpatory Evidence

3.    The government's case depended to a great extent upon the testimony of a Confidential Informant, Julian Rios, who had met with the defendants in what were alleged to be cocaine transactions in January and March of 2005.

4.    Although Rios was equipped with an electronic device to make audio and visual recordings on both dates, no video of any object which can clearly be said to be a controlled substance or a container for such a substance appears on either recording.  Defendant Cruz's attorney made an opening argument emphasizing that the jury should not leap to any conclusions about what the government alleged  they were seeing on the recordings, and that things are not always as they seem.  Defendant Diaz elected to reserve opening, relying on Cruz's attorney to set the tone of the joint defense.

5.    Prior to trial, the defendant's had specifically requested discovery of the Initial

Suitability Review , mandatory under the current Attorney General's Guidelines Regarding The Use of Confidential Informants, of government witness Julian Rios. The government had replied that the FBI claimed Rios was not a Confidential Informant, was therefore not subject to that requirement, and no such document existed.  <u>See</u> Exhibits 1A through 1D, emails between counsel concerning discovery request (email addresses redacted).[1]

6.    On the second day of trial of this matter, Case Agent Mark Karengekis testified that Juan Rios was in fact a Confidential Informant, and that a document complying with the  Initial Suitability Report requirement, which he referred to as an "opening memo,"[2] was available and in the case file.  The Court thereupon ordered disclosure of all such documents, as well as any  forms 209 documenting money provided to Rios for the purpose of making  "controlled buys."

7.    Over night, the government assembled, copied, and provided to the defendants a large number of  documents, including the document apparently described by Agent Karengekis, BS CIU Form 1 dated September 20, 2004 stating that  "the following individual <u>is to be opened under the initial suitability report and recommendation</u> (SR&R) as a CI or as a CW."  <u>See</u> Exhibit 2, p. 1 "Details," ¶ 1.  The document also states "The Individual in question was a CI for the Hampden

---

[1]  The Guidelines are available in PDF format at http://www.usdoj.gov/olp/dojguidelines.pdf

[2] A transcript of this day of the trial is not yet available.  Accordingly, terminology used by the agent is based on counsel's memory.

3

County Sheriff's Department, and was brought to the FBI as same by SFO Frank

Ott, SGT, HCSD.  The Individual <u>was operated</u> as a CI while incarcerated, and is

now released."  <u>Id</u>., p. 6, ¶ 8 (emphasis added)."

8.    Other documents in the overnight disclosure state that "Captioned subject was

opened on April 27, 2004."  <u>See</u> Exhibit 3, BS CIU Form 23 of Mark Karengekis,

dated December 1, 2004, "Details."  Counsel has been unable to locate in the

discovery any document which appears to be an Initial Suitability Report and

Recommendation dated on or about April 27, 2004.

9.    Among the reports provided overnight for the first time to defense counsel was

a narrative detailing a "ruse" murder created by the FBI and Rios, in which he

posed as a "Puerto Rican hit man" under the control of two Italian mafioso, Slim

Mark and Frankie O (Case Agent Mark Karengekis and Task Force Officer Frank

Ott,).  <u>See</u> Exhibit 4.

10.    Defense counsel had received previous information that two other targets of the

broader investigation, "Operation Dethrone," claimed they were in great fear of

violence at the hands of Rios or others under his control, and had been coerced

into selling drugs, even though they had left the drug dealing life many years

before.  Defendants had made strategic decisions to discount this information in

allocating pretrial resources, framing opening arguments, and cross-examination

of witnesses.  These decisions were made without benefit of the detailed

information about the perpetration of a "hit man ruse" by Rios and the FBI in this

4

new discovery.[3]

11.    Late disclosure during trial of this new information concerning this ruse, including

identification of a previously undisclosed witness, George Jones, presented the

defendants with an unfair dilemma: on one hand, whether to continue with the

original jury, before whom they had elicited favorable testimony on cross-

examination of the Government's witness; or on the other, whether to seek a

mistrial so as to be able to fully investigate a newly-attractive avenue of defense.

12.    The late-disclosed documents also included additional information of rewards or

inducements, including the fact that Rios had been allowed to choose his

relocation destination, and chose "the [redacted], a territory of the [redacted]",

See Exhibit 5, p.3, ¶ 3; and  also that he was advanced $1700.00 to cover

expenses related to dental work.  See Exhibit 6, p. 2, ¶ 6.

12.    The situation was thrown into further confusion by the Government's failure, in

the initial overnight disclosures between the second and third day of trial, to

locate all of the forms 209, such that it initially appeared that buy money for the

alleged March 30th transaction was unaccounted for in the FBI Records.  See Trial

---

[3]  Defendant's had received pretrial discovery indicating that Rios had
participated in "getting a gun off the street" by making it appear the gun had been
used in a killing, but were unaware that he had let it be known generally that he was
a "hit man," had claimed to have killed a man in Vermont, or that federal agents had
participated by masquerading as mafioso, thereby enhancing  his aura of
dangerousness,  and bolstering his claim that he could order others to enforce his
demands through violence.

Tscpt, 9/27/06, pp. 10-13.  When yet another Form 209 was located during a break in the September 27th proceedings, allegedly accounting for the March 30th money, a discrepancy still remained between the differing amounts of money testified to by Agent Karengekis at trial, and the amounts memorialized by the 209's.  Id. pp. 25-26.

13.    The failure to provide full disclosure of weaknesses in the government's case early in the proceedings interfered with the defendant's ability to investigate the background and character of the government witness and the veracity of his testimony.

<u>The Misjoinder Issue</u>

13.    At a pre-trial hearing on the Defendant's Motion for Bill of Particulars on August 9, 2006, the government stated that the conspiracy case included the January 5th and March 30th drug sales, and an intervening telephone call on January 7th:

MR. LELLING: There's a transaction on January 5th, both of them are there and they sell drugs.  There's a transaction on March 30th involving just Diaz, because the other defendant was incarcerated.  And there is the phone call on January 7th in which Mr. Diaz refers to wanting to sell some drugs to get some money to help Mr. Cruz's defense, that is the theory on the conspiracy.

PTH, 8/9/06 p. 30. line 22 through p. 31, line 4.

6

14.    At trial, by way of opposing a <u>Petrosiello</u> objection, the government averred that the March 30th transaction was not part of the conspiracy.  Tr, 9/27/06, p. 18, lines 9 -18; Id., p. 20, lines 17-19 and that it had never been the government's position that the March 30th transaction was part of the conspiracy.  <u>Id</u>., p. 34, lines 18-25.

15.    By requesting a bill of particulars, the defendants had taken every reasonable step to determine prior to trial whether severance of charges was necessary. Defendants would have been in a position to make the appropriate severance motion had the government accurately stated it's theory of the scope of the conspiracy.  The government did not disclose its theory until it was too late to take steps to protect Defendant Cruz from the prejudice inherent in the voluminous inadmissible (as to Cruz) hearsay injected into the case, as well what should have been impermissible content of the government's opening argument. Furthermore, Defendant Diaz was presented with the late disclosure issue in the context of a trial which could only be salvaged by mis-trying the case against the only other defendant, when his counsel had forgone any opening argument, had divided up pre-trial preparation for witnesses, and was now also forced to struggle with the implications of newly-disclosed discovery which may demand a radically different approach to the case.  All of this was occurring in the context of a trial which all of the participants expected to last only a very few days, with an extended daily schedule, making further investigation during the course of the

7

trial impractical.

16.   In the colloquy with defendants which preceded declaration of the mistrial, the

Court did not require an absolute waiver of Double Jeopardy protections by the

defendants.   Rather, the Court inquired: "And do you understand that usually

when a mistrial is declared after a defendant like you has asked the judge to

declare a mistrial, that means that you can be tried again before another jury?"

(emphasis added.)  Tr., p. 42, line 19-22.

17.   The mistrial was declared  for reasons "relating to the prejudicial joinder and

reinforced by the delayed disclosure of exculpatory information problem... whose

implications I can't fully assess at this point independently..."  Tr., p. 43, lines

21-24.

<u>Illegality of the "Controlled Buy"</u>

18.   All of the charges in this matter arise out of two alleged "controlled buys," in

which Julian Rios, a confidential informant who is not a federal law

enforcement officer, allegedly purchased and possessed controlled substances

at the direction of federal law enforcement officers.  This was in violation of

federal law [21 U.S.C. §844] and Massachusetts law [M.G.L. c. 94C §34],

19.   In the course of the above-described activities, Julian Rios also made

warrantless single-party consent electronic interceptions of oral

communications, in violation of Massachusetts law. M.G.L. c. 272 §99(C)(1). [4]

20.    No statute authorizes an executive officer or agency to license private

individuals to violate federal or state criminal statutes.

21.    Julian Rios was not authorized to act as an FBI confidential informant nor to

commit crimes on behalf of the federal government in the investigation of

suspects who were not members of the Latin Kings, and there is no evidence in

this case that Ricardo Diaz was a member of the Latin Kings. See PTH, 8/9/06

p. 39, lines 13-22; see also Exhibits 7A - 7C.

23.    Notwithstanding timely pretrial requests, virtually all of the information

underlying objections to the admissibility of Rios' evidence was disclosed for

the first time during trial, immediately before the declaration of the mistrial.

This fact explains the defendant's failure to file a prior motion to suppress or

dismiss. See, United States v. Paulino, 61 F3d 986, 994 n. 5 (1st Cir.

(1995)(Government's failure to comply with Rule 12(d) notice requirement

excused failure to file motion to suppress).

24.    Exclusion from evidence of Rios' testimony, and the audio and video recordings

he acquired, is appropriate because the government obtained the evidence

against both Cruz and Diaz by allowing him to engage in conduct which violated

state and federal laws, and which went well beyond federal law delimiting the

---

[4]  The statute exempts federal officials but not confidential informants from its purview. §99(D)(1)(c).

authority of the Attorney General to grant immunity.  In addition, SA

Karengekis acted outside the DOJ Guidelines by allowing Rios to commit

unauthorized crimes in order to conduct an investigation of a non-Latin King

member.

25.    A  Memorandum of Law is filed herewith and incorporated by reference, in

compliance with Local Rule 7.1.

Wherefore the defendants respectfully request that the above-described relief

be granted.


DATED: November 30, 2006

Respectfully submitted,               Respectfully submitted,
Ricardo Diaz, Defendant               Cesar Cruz, Defendant

By: /s/ Terry Scott Nagel             By: /s/ Joseph Franco
Terry Scott Nagel, Esq.               Joseph Franco
95 State Street, Suite 918            51 Park Ave.
Springfield, MA 01103                 W. Springfield, MA 01089
(413) 731-8811                        (413) 737-2675
BBO#:  366430                         BBO#: 543038


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 30, 2006.

/s/ Terry Scott Nagel

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                                    **Date:** 12/28/2004

**To:** Boston

**From:** Boston
          Springfield Resident Agency
          **Contact:** SA Mark S. Karangekis  413/735-2304

**Approved By:** O'Reilly Michael *M CO/M*

**Drafted By:** Karangekis Mark S

**Case ID #:** 270B-BS-94387    (Pending) -2b
              137A-BS-A81318-B (Pending) -1011                          (X)

**Title:** BS-9416-CW-VG

**Synopsis:** Request participation in otherwise illegal activity.

**Details:** **AUTHORIZED ILLEGAL ACTIVITY FROM** 12/29/2004 **TO** 3/29/2005
(Leave this blank - CIU shall fill in dates)

## SECTION I

**CAPTION:**  **OPERATION DETHRONE**
**FILE #:**   **245D-BS-91441-Spring**

**CAPTION:**
**FILE #:**

## SUMMARY OF FACTS OF THE INVESTIGATION TO SUPPORT AUTHORIZATION:

The captioned matter is an on going investigation of the criminal
activities of the members and leaders of the Massachusetts Chapter of
the Almighty Latin King/Queen Nation (Latin Kings). The criminal
activities include the organized distribution of drugs, and violence
associated to that drug distribution, in several cities throughout
the Commonwealth of Massachusetts. Individual is in a position to
make controlled purchases of drug and firearm evidence from targets
of investigation.

Page 1 of 6                              BS CIU Form 11 (Revised 11/01/01)

Exhibit Seven B                          270B-BS-94387-2b

**SPECIFIC DESCRIPTION OF AUTHORIZED OTHERWISE ILLEGAL ACTIVITY:**

Possession of heroin, cocaine, subsequent to a controlled purchase of drug evidence.

Possession of firearm subsequent to a controlled purchase of firearm evidence.

CIU Coordinator's Approval
Page 2 of 6

**BS CIU Form 11 (Revised 11/01/01)**

## SECTION II

### FINDING

SUPERVISOR MUST INITIAL NOTES

      The approving official(s) have found that the activity is necessary either to:

      (A) _Mco/H_ Obtain information or evidence essential for the success of an investigation that is not reasonably available without such authorization; or

      (B) _____ Necessary to prevent death, serious bodily injury or significant damage to property; and

      That in either (A) or (B) the benefits to be obtained from the source's participation in the Tier 1 or Tier 2 Otherwise Illegal Activity outweigh the risks involved in this CI/CW's participation.

      In making these findings, the approving officials have taken into consideration the following:

      1.   The importance of the investigation;

      2.   The likelihood that the information or evidence sought will be obtained;

      3.  The risk that the CI/CW might misunderstand or exceed the scope of his/her authorization;

      4.   The extent of the CI/CW's participation in the Otherwise Illegal Activity;

      5.   The risk that the FBI will not be able to supervise closely the CI/CW's participation in the Otherwise Illegal Activity;

      6.   The risk of violence, physical injury, property damage, and financial loss to the CI/CW or others; and

      7.   The risk that the FBI will not be able to ensure that the CI/CW does not profit from his or her participation in the authorized Otherwise Illegal Activity.

BS CIU Form 11 (Revised 11/01/01)

## SECTION III

The case agent and the approving officials shall take all reasonable steps to:

1.  Supervise closely the illegal activities of the CI/CW;
2.  Minimize the adverse effect of the authorized otherwise illegal activity on innocent individuals;
3.  Ensure that the CI/CW does not profit from his/her participation in the authorized otherwise illegal activity; and
4.  Minimize the CI/CW's participation and ensure that the CI/CW is not the primary source of technical expertise or financial support for the activity for the activity in which he/she will participate.

## SECTION IV

(CW ONLY) AUSA **Paul Smyth** WAS CONTACTED REGARDING THE CW ON 12/28/04 AND CONCURRED WITH THE AUTHORIZED CRIMINAL ACTIVITY AND A LETTER OF CONFIRMATION WAS SENT.  **THE FILE COPY OF THIS LETTER MUST BE ATTACHED.**

**AUTHORIZATION:**

SAC/ASAC _____

DATE _____

BS CIU Form 11 (Revised 11/01/01)

**SECTION V** (ADMONISHMENTS TO CI/CW)

This CI/CW was advised, in person, of the following admonishments and the CI/CW stated he/she fully understood these admonishments:

1. You (CI/CW) are authorized only to engage in the specific conduct set forth in the written authorization described above and not in any other illegal activity;

2. Your (CI/CW) authorization is limited to the time period specified in the written authorization;

3. Under no circumstance may you:

    a. Participate in an act of violence;

    b. Participate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, alteration, or destruction of evidence);

    c. Participate in an act designed to obtain information for the FBI that would be unlawful if conducted by a law enforcement agent (e.g., breaking and entering, illegal wiretapping, illegal opening or tampering with the mail, or trespass amounting to an illegal search); or

    d. Initiate or instigate a plan or strategy to commit a federal, state, or local offense.

4. If you are asked by any person to participate in any such prohibited conduct or if you learn of plans to engage in such conduct, you must immediately report the matter to your contact agent.

5. Participation in any prohibited conduct could subject you to full criminal prosecution.

BS CIU Form 11 (Revised 11/01/01)

I was advised of the admonishments listed above, as set forth in Section V of this authorization, by the law enforcement officials whose names appear below. By signing this form, I acknowledge I fully understand and shall abide by these conditions.

CI/CW Signature (Code Name) _____ (Date) 12/29/04
CI/CW Code Name Typed:  Starkist

Special Agent Signature _____ (Date) 12/28/04
Special Agent's Name Typed:  Mark S. Karangekis

Witnessing Law Enforcement
Official Signature _____Frank Ott_____ (Date) 12/29/04
Official's Name Typed:  SFO Frank Ott, Deputy Sheriff, HCSD

SSA Approval: _____
SSA's Name Typed:  Michael G. O'Reilly

◆◆

**Terry Nagel**

| | |
|---|---|
| **From:** | "Lelling, Andrew (USAMA<span style="color:black">████████████</span>@<span style="color:black">███████</span>> |
| **To:** | <TerryNag<span style="color:black">█████████</span>> |
| **Cc:** | <JAFE<span style="color:black">██████████████</span> |
| **Sent:** | Friday, September 22, 2006 1:51 PM |
| **Subject:** | RE: |

Terry, following up on the suitability review issue:  the FBI has reviewed its files and determined that it did not do a CSR ("continuing suitability review") for Rios.  (Paul Smyth had thought the FBI did do one, but the agency confirms they did not.)  The AG Guidelines do not require a CSR for cooperating witnesses, but only for confidential informants.  I am informed that sometimes they do CSR's for cooperating witnesses, but usually not (the decision is made case by case - they look to see if the cooperating witness is working out well, and if not, they might ask for one as a mechanism for reviewing the situation).

Email or call me with any questions. - Andy

*Andrew E. Lelling*
*Assistant U.S. Attorney*
*District of Massachusetts*
*617-748-3177*

Exhibit One B

10/2/2006

**Terry Nagel**

| | |
|---|---|
| **From:** | "Terry Nagel" |
| **To:** | "Lelling, Andrew (USAMA)" |
| **Cc:** | "Joseph Franco" |
| **Sent:** | Friday, September 22, 2006 2:37 PM |
| **Subject:** | Re: RE: |

Andrew

What you have been told seems inconsistent with the DOJ Guidelines. They define a "Cooperating Defendant/Witness" in Section B. 7 as an individual who "a. meets the definition of a CI." So CI would seem to be a subset of Cooperating Witness, and there should be a suitability determination.

Furthermore,, if Rios is a CW, then B.7. c (i) says he "is a defendant or potential witness who has a written agreement with a FPO [Federal Prosecuting Office], pursuant to which the individual has an expectation of future judicial or prosecutive consideration or assistance as a result of having provided information to the JLEA, or" (ii) is a potential witness who has had a FPO concur in all material aspects of his or her use by the LJEA."

Karenjenkis appears to describe Rios as both a CI and a CW in his 2/17/05 Grand Jury testimony, pp. 9-10, saying essentially that a CW is a CI who actively participates, rather than just giving information.

So I would want to know if he falls under (i) or (ii), and if it's (i), obviously I would want the written agreement.

I would appreciate your looking into this a little further.

Terry Nagel

Exhibit One C

**Terry Nagel**

| | |
|---|---|
| **From:** | "Lelling, Andrew (USAMA)" ██████████@████████v> |
| **To:** | "Terry Nagel" ████████████████> |
| **Cc:** | "Joseph Franco" ████████████<sharron.kearney██████████ |
| **Sent:** | Friday, September 22, 2006 2:44 PM |
| **Subject:** | RE: RE: |

Well, you have his written cooperator agreement. I'll follow up
with Mark, but he's pretty thorough, and I'm sure he's telling me
accurately how the FBI interprets the AG Guidelines. There is no
question Rios is a CW, since he in fact did controlled buys and is now
testifying, and he was recruited by the FBI to fill that role. Just
because "CW" appears to be a subset of "CI" in the Guidelines does not
mean that a recruited individual is first processed as a "CI" and then
later processed as a "CW." I'll ask again though! We may just put you
in touch with the FBI's counsel on this issue.

Exhibit One D

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                      **Date:** 09/20/2004

**To:** Boston                    **Attn:** CIU Coordinator

**From:** Boston
      Springfield Resident Agency
      **Contact:** SA Mark S. Karangekis 413/735-2304

**Approved By:** O'Reilly Michael G

**Drafted By:** Karangekis Mark S:msk          *270M-BS-94387*
                                   *BS 9416 - CW-VG*

**Case ID #:** 270M-BS-NEW    (Pending)    *(previously 137F-BS-93729)*

**Title:** BS-NEW

**Synopsis:** Opening Cooperative Witness.

**Details:**    The following individual is to be opened under the initial
suitability report and recommendation (SR&R) inquiry as a CI or as a CW.
During the SR&R, a SA may accept passively obtained information from
individuals and may make reasonable payments for services and/or expenses.
Note: You must completely answer all questions.

*opened 9/22/04 AmB*

If this is a 137 (CI), the following must be attached to this opening:
   a. Complete Criminal History Check - which checks wants & warrants, III
      and Massachusetts Board of Probation.  If the potential source is
      not a MA resident, case agent must also request a criminal check for
      the state of the source's residence.
   b. FD-160 with corresponding printouts (Include ISIS and OCIS for VCMO,
      OC and Drug sources only.)
   c. EC documenting the Alternate Agent has met the source (BS CIU Form 7).

   Prior to conversion the following must be in the file:
      1.    Source photo
      2.    Admonishments (BS CIU Form 2)
      3.    EC documenting the SSA's meeting/observing the source.
         (BS CIU Form 8)

If this is a 270 (CW), the following must be attached to this opening:
a, b & c. Same as stated above for 137s.
   d.    Admonishments. (BS CIU Form 2)
   e.    Photograph of source.
   f.    The SSA must meet/observe the source within 90 days of this opening
      and be documented to the file via EC.  (BS CIU Form 8)
   g.    Copy of AUSA concurrence letter.  (See BS CIU Forms 5 and 6)

*form 16*              **This Section for CIU use only**

**CIU Coordinator's Approval to Open:** _____

**WSP Check:** *Neg hml 9/22/04*    Page 1 of 8          BS CIU Form 1 (Revised 11/01/01)

Exhibit Two          *270M-BS-94387-1*

**Section A**

1.   Code Name:  Starkist  ✓ Neg Dmb 9/22/04
**This must be a one word code name and can be chosen by the
case agent - but the code name must be approved by CIU to
ensure it has never been used before and is not derogatory.**

2.   Individual's true name:  JULIAN RIOS  ✓ Neg Dmb 9/22/04
     Aliases:

3.   Identifying Numbers (SSAN, DRIV. LIC, FBI PASSPORT)
     SSAN: 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   FBI. 9144IMA4

4.   Home Address (must include street, city & state) 208
Belmont Street, Springfield, Massachusetts.

5.   Occupation/Job Title:  Laborer
     Employer's Name:  Currently seeking employment
     Employer's Address: Currently seeking employment

6.   Date of Birth: 2/22/71
     Place of Birth:  Springfield, MA

7.   Physical Description
     Sex:  M       Race: Hispanic
     Hair: Brown    Eyes: Brown
     Height: 5'5   Weight:  170

8.   Contemplated coverage (i.e. 245B, 29C):245D, 166E, 88A

9.   Alternate Agent (must be an FBI Agent): SA ANDREW
LITOWITZ

10.  *If applicable* name of Co-case Agent (i.e. Task Force
Agent):  SFO Frank Ott

     NOTE: If #10 is applicable, attach BS CIU Form 16 and
list the names of all task force members who will be
participating in the investigation of the source as well as
any law enforcement agent supervisor who will need to know the
source's identity.

BS CIU Form 1 (Revised 11/01/01)

11.  Place an "x" in front of the applicable line below (137 or 270)
     __   (137) A Suitability and Pertinence Inquiry has been
instituted since the above individual has expressed an interest or
is in a position to furnished information pertaining to: (underline
the option(s) that apply)
Drugs, Organized Crime, White Collar crime, Violent Crime, or
Domestic Terrorism.

     _x_  (270) Brief description of how the Cooperative Witness will
be used in the case:

Operational Role will include (underline as many that apply)
        <u>Consensual Monitoring</u>
        <u>Introduce Undercover Agent</u>
        <u>Purchase Contraband</u>
        <u>Purchase Other Evidence</u>
        Other

        AUSA's Name:  Paul Smyth
        Date of Concurrence:  9/17/04

12.  A.   Is this a Privileged CI/CW **(Yes or No)**  NO
          *Privileged* CI/CWs are:
          *Attorneys,
          *Licensed physicians (also includes chiropractors,
          *physician's assistants and nurses),
          *Members of the clergy,

     B.   Is this a Sensitive CI/CW **(Yes or No)**  NO
          *Sensitive* CI/CWs are:
          *Federal or state prisoners, parolees, probationers,
or
          on supervised release,
          *Law enforcement officials,
          *Appointed or elected public officials,
          *Union officials,
          *Employees of financial institutions,
          *Employees of educational institutions,
          *Active duty members of the United States Military,
          *Present or former members of the Witness Security
          *Program,
          *Minor (under 18 years of age),
          *Employees of the Federal Bureau of Prisons,
          *Counselors in substance abuse treatment program,
          *Employees of the news media,
          *Fugitives.

                                                    BS CIU Form 1 (Revised 11/01/01)

If this CI/CW is Privileged or Sensitive please see the CIU
Coordinator.

13.   If this source is an inmate, a parolee, a probationer or
supervised release, please answer the following questions:

      a.   Name of person noting concurrence with the operation
of this person as a source (including their title):

      b.   Name of the agency/facility they are employed by
(i.e. MCI Shirley, Suffolk County Probation Office):

      c.   Date noting concurrence:

## Section B

1.   Is the Complete Criminal History printout attached?
     **(Yes or No)   YES**
     Are there outstanding warrants? **(Yes or No)   NO**
     If yes, please explain.

2.   The prospective handling agent must conduct his/her own
checks which must be reviewed by a supervisor prior to
opening.  CIU shall only conduct confidential indices to
determine if this source is/was a CI, CW or a WSP participant.
The following explains the checks set forth on an FD-160:

      **General Indices:**  This is the index card system used
prior
      to the creation of ACS.  It is current through 1986.
      **FOIMS:**  This is ACS.  You must conduct a search of the
      Universal Index for the source's name.  When conducting
this
      search do not  specify a field office or dates indexed.
All
      hits must be printed and attached to the FD-160 (even if
      they do not materially affect the decision to operate the
      source).  Any hit is considered positive and must be
listed
      on this opening EC.  If there are more than three cases
to
      list, please type "too numerous to list".
      **ELSUR:**  Electronic surveillance
      **ISIS:**  This is Drug X - for VCMO, OC and Drug sources
only.
      If this is not one of those sources please type "N/A".
      **OCIS:**  This is CLEA - for VCMO, OC and Drug sources only.
If
      this is not one of those sources please type "N/A".

BS CIU Form 1 (Revised 11/01/01)

    Results of searches (please indicate negative for no hits
and positive for any hit.  If positive list files.)
    a.   General Indices:  Negative
    b.   FOIMS: Positive  - 245D-BS-91441-SPRING
    c.   ELSUR: Negative
    d.   ISIS:  Negative
    e.   OCIS:  Negative

3.   Photo attached?  **(Yes or No)   YES**


**Section C**
1.   What is this individual's immigration status?  (Example,
U.S. Citizen, Legal Alien)  **U.S. Citizen**
    NOTE:  FBI policy forbids the opening/operating illegal
aliens as CI/CWs.


2.   To your knowledge, is the source a substance abuser, or
has the source had a history of substance abuse?
    **(Yes or No) NO**
    If yes, fully explain.


3.   To your knowledge, is the source related to an employee
of any law enforcement agency?
    **(Yes or No) NO**
    If yes, fully explain.


4.   To your knowledge,
    a.   does the source's information to date appear to be
reliable, truthful, and relevant to a present or potential
investigation?
    **(Yes or No) YES**
    (If no, please explain.)

    b.   can the source's information or assistance
corroborated?
    **(Yes or No) YES**
    (Please explain how you have corroborated/will corroborate the
information.)  Other Confidential Informants and Cooperating
Witnesses, in addition to police data basis and active investigation,
have corroborated the Individual's information, and have established
the veracity of the Individual's ability to infiltrate, disrupt, and
dismantle a violent National Gang Strategy target.


5.   Is the source related to any subject or target of an
existing or potential investigation or prosecution (including
but not limited to a current or former spousal relationship or

BS CIU Form 1 (Revised 11/01/01)

other family tie, and any current or former employment or
financial relationship?
    **(Yes or No) NO**
    If yes, fully explain.


6.  Does the source have a prior record as a witness in any
past court proceedings - including Grand Jury?
    **(Yes or No) NO**
    If yes, fully explain.


7.  To your knowledge, is there reason to believe that this
potential CI or CW is presently cooperating with another law
enforcement agency?
    **(Yes or No) NO**
    If yes, fully explain.


8.    a.  When there is reason to believe that the source has
previously served as a CI or CW for another law enforcement
agency, what was the other law enforcement agency's reason for
termination of the relationship?
    **(Fully explain or type N/A.)**  The Individual in question
was a CI for the Hampden County Sheriff's Department, and was
brought to the FBI as same by SFO Frank Ott, SGT, HCSD. The
Individual was operated as a CI while incarcerated, and is now
released.

    b.  Was this source operated by the FBI in the past and
closed for-cause?  (i.e. unauthorized criminal activity,
untruthfulness, deception, violation of instructions, etc.)
**(Yes, No or N/A)** NO
    If yes, SAC approval is required.

9.  To your knowledge, does the source pose any danger to the
public, or other criminal threat, or is reasonably believed to
pose a risk of flight?
    **(Yes or No) NO**
    If yes, fully explain.


10.  Have you taken into account the risk factor that this
source may adversely affect an investigation or potential
prosecution?
    **(Yes or No) YES**

BS CIU Form 1 (Revised 11/01/01)

11.  To your knowledge, is there a risk of physical harm may
occur to the source, his/her immediate family or close
associates, as a result of assisting the FBI?
     **(Yes or No) YES**
     If there is a risk, fully explain.  The Individual is a
trusted member of the target group, which is well known for
punishing defectors from that group, particularly those who
cooperate with the police.  The Individual will actively
assist in obtaining evidence, and in doing so, become known to
the subjects upon indictment and arrest.  The Individual and
his immediate family will require relocation, and possibly
witness protection.


12.  Fully set forth the source's motivation in assisting the
FBI?  The Individual has been a member of the target group for
most of his adolescence, and his entire adult life.  The
Individual has spent a good deal of that time incarcerated,
and has become disallusioned with the organization to which he
belongs.  The Individual wishes to leave the organization and
understands that the only other way to leave the institution
under its guidelines is to be terminated from it, which
usually involves violence which could result in serious injury
or death.

13.  Has the source sought consideration from the government
for this assistance?
     **(Yes or No)  NO**
     If yes, fully explain.


14.  a.   To your knowledge would the source make use of
his/her affiliation with legitimate organizations in order to
provide information or assistance?
     **(Yes or No)   NO**
     If yes, fully explain.

     b.   If question 14a. is applicable, the case agent and
SSA must ensure the source's information or assistance is
limited to criminal matters.


15.  Does this individual meet the definition of a High Level
Confidential Informant/Cooperating Witness (HLCI/HLCW)?
     **(Does or Does Not)  DOES**

     *An HLCI/HLCW is defined as:  A CI/CW who is part of the
senior leadership of an enterprise that has a national sphere
of activities or is of high significance to the FBI's national*

*objectives, even if the enterprise's sphere of activities is local or regional; and engages in or uses others to commit any of the following types of conduct:*

   \*The commission, or the significant risk of the commission,
of any act of violence by a person or persons other than the
   CI/CW; (Note: Bookmaking that is significantly associated with, or substantially controlled by, organized crime ordinarily will be within the scope of paragraph (I)(B)(10)(i), AGG.  Thus, for example, where bookmakers have a financial relationship with members or associates of
   organized crime, and/or use members or associates of organized crime to collect their debts, the conduct of those
   bookmakers would create a significant risk of violence, and
   would therefore fall within the definition of Tier 1 Otherwise Illegal Activity); or
   \*Corrupt conduct, or the significant risk of corrupt conduct, by senior federal, state, or local public officials; or
   \*The manufacturing, importing, exporting, possession, or trafficking of controlled substances in a quantity equal to
   or exceeding those specified in United States Sentencing Guidelines (30 Kg of Heroin; 150 Kg of Cocaine, 1.5 Kg of crack cocaine, 15 Kg of Methamphetamine, etc.)  For identity
   of each controlled substance and amount refer to U.S. Sentencing Guidelines, Section 2D1.1 (C)(1); or
   \*Financial loss, or the significant risk of financial loss, in an amount equal to or exceeding those amounts specified in the United States Sentencing Guidelines Section 2F1.1(b)(1)(M); (Currently $1.5 million)

The above information has been reviewed and the individual qualifies as: (place an x in front of the appropriate option)
____  Suitability Inquiry Status
X   Cooperative Witness

**Signature of Supervisory Special Agent:** _____
**(must be a GS-14 or above)**
                                    **Date Signed:** _9/98/04_____

♦♦

## FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                     **Date:** 12/01/2004

**To:** Boston                    **Attn:** SAC

**From:** Boston
          Springfield Resident Agency
          **Contact:** SA MARK S. KARANGEKIS   413/735-2304

**Approved By:** O'Reilly Michael G
                 Deslauries Richard

**Drafted By:** KARANGEKIS MARK S:MSK

**Case ID #:** 270M-BS-94387 M    (Pending)

**Title:**   BS-9416-CW-VG

**Synopsis:**     Payment request.

**Details:**  Captioned subject was opened on 4/27/2004.  Request
the following payment to CI/CW, $1200 .00 total; $ 00 for
services and $1200.00 for expenses.

Period Covered 12/01/04 to 1/01/05.

Prior Balance (Each CI/CW begins with
a **$100,000** balance per FY: Oct. 1 - Sept. 30)   $ 90,200.00
This Payment                                        $  1,200.00
New Balance (Subtract above)                        $ 89,000.00
  Total Pay this FY (Oct. 1 - Sept. 30)             $ 11,000.00
Aggregate Amount (This is the total amount
paid during the life of this CI/CW by any
Division of the FBI)                                $11,000.00

This payment relates to the following investigation:
SUBSTANTIVE CASE ID: 245D-BS-91441-Spring.
CASE TITLE:  Operation Dethrone

### JUSTIFICATION NARRATIVE

          Source is a high ranking and trusted member of the
Almighty Latin King/Queen Nation, Massachusetts Regional
Chapter.  Source was incarcerated for several years, but

UPLOADED

WITH/TEXT ✓
WITHOUT/TEXT
BY
DATE 10/15/04

Page 1 of 3

Exhibit Three

270M-BS-94387-M-12

maintained his status and position in the criminal organization during that time. Source is known as a drug trafficker and gun runner to high level leaders and most significant members of that organization.

Since the beginning of his cooperation, Source has identified numerous subjects of investigation, to include leaders and significant members of the Latin Kings, and has provided information regarding their criminal activities, which include drug distribution and violence associated to that distribution. The volume of the Source's information has been so great that it has made it difficult for case agents to determine the proper course of investigation and the appropriate order in which to address the criminal activity. The duration of the investigation will certainly reflect the abilities of the Source.

Since beginning his cooperation, Source has made numerous consensual recordings and a number of controlled purchases of drug evidence from subjects, to include subjects identified as Regional leaders of that organization. The Source's participation has required a great deal of time, and he has only been able to commit to part time employment, which has not been steady. Additionally, the Source will be required to locate at the conclusion of his cooperation, and a full time job with a lengthy commitment is not possible. To date, the government has provided expense money for modest monthly expenses totaling $1200.00. The Source is due for such a payment.

Expenses Request:

The Individual requires financial assistance in meeting modest monthly living expenses, to include rent, utilities, and gasoline in the amount of $1200.00.

**STATISTICAL ACCOMPLISHMENTS**:

While the Sources' cooperation will ultimately lead to the disruption and dismantlement of the Massachusetts Chapter of the NGS target, and will lead to further disruption of the NGS on the national level, to eleven regional leaders and significant members of the organization are indictable due to the efforts put forward by the Individual. In the past thirty days, the Individual has made over fifteen consensual recordings (often times during the controlled purchase of drug evidence) from subjects already identified, and has identified four additional subjects to be targeted. These parties have

significant criminal records, and will face significant time in prison when indicted. Their indictment alone will work to further the disruption of the organization.

Statistical accomplishments have been documented via FD 209 for all FD 302s which have been uploaded and serialized. FD 302s documenting statistical accomplishments which have not been uploaded and serialized will be documented.

**Complete a Form 25 "Expense Certification" for all expenses claimed without receipts.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - -
**(CW's only)** On November 30, 2004, AUSA Paul Smyth concurred with this payment (mandatory). **(Attach copy of AUSA concurrence letter sent to USAO.)**

♦♦

BS CIU Form 23 (Revised 11/01/01)

**Precedence:**   ROUTINE
                                           **Date:**  01/19/2006

**To:**  Boston                      **Attn:**   CIU
**To:**  Boston                      **Attn:**   SA Karangekis
                                                 Springfield RA

**From:**  Boston
          Springfield RA
          **Contact:**   SA Andrew E Litowitz

**Approved By:** NOReilly Michael G

**Drafted By:**   Litowitz Andrew E:ael *ael*

**Case ID #:**  270M-BS-94387 -94 (Pending)

**Title:**  BS-9739-CW-VG
**Synopsis:**  To document interview of George Jones

**Enclosure(s):**  1-A envelope containing notes from interview of
George Jones

**Details:** George Jones, date of birth ▮▮▮▮▮▮▮▮▮▮
security account number ▮▮▮▮▮▮▮▮▮▮▮▮ of ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ cell phone numbers ▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮
▮▮▮▮▮ was interviewed at the FBI office in Springfield, MA.
During the course of the interview, Jones provided information
regarding captioned source.

        Jones indicated that he believed that Individual was
a contract killer for the mafia in Springfield, MA and that
Individual is hiding in a different part of the country.

        Jones believes that the Individual committed a
murder in Vermont for the mafia.  Jones believes that
Individual's mafia connections are "Slim Mark" and "Frank O".
Jones provided contact numbers for "Slim Mark" and "Frank O"
because Jones was in possession of Individual's cellular
telephone.

        Jones stated that Individual is in contact with
"Slim Mark" and "Frank O" quite often and may still be
providing Individual with monetary support.

        Based upon above information, writer believes that
Jones believes what he is telling is the truth, however the
information he provided was false.  During the course of the

investigation into a violent street gang in the Springfield, MA area, it became necessary to create a ruse of a murder. The murder was a ruse created by handling agents in an effort to remove and obtain an illegal firearm from a violent gang member. Additionally, the contact numbers provided for "Slim Mark" and "Frank O" were contact numbers for SA Mark Karangekis, BS-FBI, and Frank Ott, TFO, Hampden County Sheriff's Department.

Jones also indicated that Individual may have been abusive to his/her girlfriend/boyfriend, but could produce no proof or corroboration of abuse. Jones also indicated that Individual may have been involved in the drug trade while in the Springfield, MA area.

♦♦

2

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:**  ROUTINE                              **Date:**  03/09/2005

**To:**  Boston                      **Attn:** CIU

███████  Division              **Attn:**  █████████████████████
                                         SSRA Eliasib Ortiz, Jr.
                                         SA Steve Bardowski

**From:**  Boston
           Springfield Resident Agency
           **Contact:**  SA Mark S. Karangekis  WMGTF  413/735-2304

**Approved By:**  Ward Michael
                  O'Reilly Michael G

**Drafted By:**  Karangekis Mark S:msk

**Case ID #:** 245D-BS-91441-SPRING   (Pending) - M/Z

**Title:**  Operation Dethrone;
            OCDETF - Gangs;
            OO: Boston

**Synopsis:**  Request authorization for operational travel to
███████ Division to arrange for relocation of witness in
captioned investigation.

**Details:**  In the fall of 2002, the FBI North Shore Gang Task
Force (NSGTF) initiated an investigation into the criminal
activities of members and leaders of the local leadership and
membership of the Lawrence and Lowell local chapters of the
Massachusetts Regional Chapter of the Almighty Latin
King/Queen Nation.  The investigation was code named
"OPERATION DETHRONE" after being accepted by the United States
Attorney's Office as an OCDETF investigation headed by the
FBI.

        Investigation revealed that there were significant
local chapters with local leadership operating in most major
cities in the Commonwealth of Massachusetts, and that these
local chapters reported to a state leadership, or Regional
Council of leaders, who represented the Massachusetts Regional
Chapter of the Almighty Latin King/Queen Nation.  The regional
chapter, one of many in the north eastern portion of the
United States, reported to the Almighty Latin King/Queen
national leadership in Chicago Illinois.

Exhibit Five                          270B-BS-94387-49

As "Phase I" of the investigation progressed the significance of the Regional Chapter leadership and local membership in western Massachusetts became evident. The Regional leadership and local membership in the western part of the Commonwealth was the true power base of the organization. It was clear that targeting the criminal activities of members and leaders of the local chapters would result in the disruption of those local chapters, but would not work to dismantle the regional chapter statewide. Such a dismantlement would only be achieved by targeting the criminal activities of the regional leadership based in western Massachusetts, and the local leadership/membership of local chapters in western Massachusetts, who closely supported those regional leaders. The investigation revealed that the regional leadership in western Massachusetts was the life line to other regional Latin King chapters throughout the northeast and the national leadership of this National Gang Strategy (NGS) target.

In February of 2004, twenty two members and associates of the Lawrence and Lowell local chapters of the Latin Kings, to include local leaders and Massachusetts regional officers assigned to eastern Massachusetts by the state leadership, were indicted and arrested. To date, the majority of subjects have plead guilty and a number have cooperated. Intelligence gained from those subjects confirmed what was learned during the NSGTF investigation; that the power base of the Massachusetts Regional Chapter of the Latin Kings was in the Springfield area. This information was corroborated by the intelligence gathered by the FBI's Western Massachusetts Gang Task Force (WMGTF) over years of working violent street gangs in western Massachusetts.

In March of 2004, "Phase II" of Operation Dethrone was initiated by the WMGTF. Phase II targeted the local Springfield and Holyoke chapters, and the leadership of the Massachusetts Regional Chapter as a whole. A number of Individuals not in a position to testify had been providing information to the WMGTF for a significant period of time, identifying the most significant members of the Latin Kings in western Massachusetts, and documenting their criminal activities. Several criminal investigations targeting individual members were conducted with success, and these investigations also contributed to a significant data base of reliable information.

In September of 2004, a Confidential Informant for the Hampden County Sheriff's Department was introduced to the WMGTF by its representatives to the task force, Captain Juan

2

Ramos and Sergeant Frank Ott. The party was opened as an Individual not in a position to testify. The Individual provided up to date intelligence regarding the targets identified during previous investigation. Over a short period of time, the Individual was developed into an Individual in a position to testify.

During the last twelve months, the Individual has participated in obtaining evidence of the criminal activities of identified members and leaders of the Massachusetts Chapter of the Latin Kings, to include regional leaders with close associations and contacts to the national leadership in Chicago, Illinois, and other regional chapters in the northeast and mid west. The writer is currently involved in extensive grand jury testimony, and it is anticipated that indictments charging thirty to thirty three subjects will be returned in mid Spring, in anticipation of a mid Spring takedown.

At that time, the identity of the referenced Individual will be evident to the subjects, and the Individual's life will be in iminent danger. The Individual has been advised, and the United States Attorney's Office concurs, that he will be relocated to an area from Massachusetts. The Individual in question has chosen relocate to ██████ specifically, the ████████████████, a territory of the ████████████████████████████ ██████ In preparation for such relocation, the writer has contacted SSRA ██████, SA Michael ████████, and SA ██████ ████████ of the ████, and has requested assistance in planning the referenced location.

The writer therefore requests SAC Boston's authorization for travel by the writer, SFO Frank Ott, Sergeant, Hampden County Sheriff's Department, and the Individual to ████████████████████ on March 20, 21, and 22, 2005. At that time, the writer and SFO Ott, with the assistance of the ████████████, will assist the Individual in securing housing, utilities, and employment. In addition, the writer and SFO Ott will assist the Individual in opening appropriate bank accounts for the receipt of relocation money.

The writer is of the opinion that close supervision of the Individual during this process will result in the most efficient and cost effective relocation.

3

**LEAD(s):**

**Set Lead 1:   (Action)**

███████

<u>AT</u> ████████████████████ <u>RA</u>

  Advise as to SAC ███████ authorization for SA
Karangekis and SFO Ott activities ████████████████

◆◆

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                    **Date:** 10/24/2005

**To:** Boston                    **Attn:** SAC

**From:** Boston
        Springfield Resident Agency
        **Contact:** SA MARK S. KARANGEKIS 413/735-2304

**Approved By:** Kline Kevin
          O'Reilly Michael G

**Drafted By:** KARANGEKIS MARK S:MSK

**Case ID #:** 270M-BS-94387 M - (Pending)

**Title:** BS-9416-CW-VG

**Synopsis:**    Payment request.

**Details:**  Captioned subject was opened on 4/27/2004.  Request
the following payment to CI/CW, $ 1700.00 total; $ 00 for
services and $ 1,700.00  for expenses.

Period Covered for expenses: 11/1/05 to 11/30/05.

| | |
|---|---|
| Prior Balance (Each CI/CW begins with a **$100,000** balance per FY: Oct. 1 - Sept. 30) | $ 54,443.99 |
| This Payment | $  1,700.00 |
| New Balance (Subtract above) | $ 52,743.99 |
| Total Pay this FY (Oct. 1 - Sept. 30) | $ 44,871.71 |
| Aggregate Amount (This is the total amount paid during the life of this CI/CW by any Division of the FBI) | $44,871.71 |

This payment relates to the following investigation:
SUBSTANTIVE CASE ID: 245D-BS-91441-Spring.
CASE TITLE:  <u>Operation Dethrone</u>

Page 1 of 3

Exhibit Six

## JUSTIFICATION NARRATIVE

### Expenses:

Source was relocated on June 2, 2005.

It should be noted that the spending of all funds requested and allocated for the Individual's relocation have been closely supervised by the writer and the relocation city liaison agent, Special Agent ▓▓▓▓▓▓▓▓, ▓▓▓▓▓▓▓▓ ▓▓▓▓▓ Division.

At the time of relocation, the writer was provided with a monthly stipend to cover his living expenses until such time as he could obtain employment and get regular income. Source was paid from March of 2005 to September of 2005 for such expenses. By September of 2005, Source had full time employment with a good pay, and has since been promoted on two separate occasions. Source has no health insurance, and will not receive health benefits from his job for an additional two months.

Recently, Source developed an infection in caused by impacted wisdom teeth, and the infection resulted in his becoming ill. The Source has missed several days of work, and has incurred medical expenses that he has paid for with money with which he would normally pay rent and other expenses. The source is expected to miss additional work, and is expected to amass additional doctors bills when he receives minor surgery at the end of October. The Source's bills are paid through October, but he is concerned that he will not be able to make his expenses for the month of November, and is unable to put off the surgery until his health care becomes effective in December. The writer advised the Source that he would seek assistance for the month of November only, and re-stressed that the Individual secure his employment beyond his illness.

The relocation has been successful to date, and has insured the Individual remains a viable witness. While a number of defendants (5 of 35) have plead guilty, and a large number more are ready to do so, it is anticipated that several higher level subjects with greater significance in the target gang who are facing lengthy sentences (in excess of fifteen years) will go to trial.

Based on the special circumstances cited above, the writer requests $1,700.00 for the Individual's monthly living expenses for the month of November.

## STATISTICAL ACCOMPLISHMENTS:

　　　　Since his opening, the Individual consistently produced high statistical accomplishments. At the takedown of Operation Dethrone, the writer reported the following statistics: 28 Federal indictments, 1 Federal complaint, and 6 state complaints, and 35 arrests. In addition, there were 9 firearms recovered based in relation to the above stated arrests. More recently, subjects arrested on Complaints have been indicted, resulting in seven additional indictment statistics. On August 23, 2005, a Federal Grand Jury indicted subjects for additional charges related to the firearms seized, and acts of violence uncovered from evidence obtained from cooperating defendants. A statistic not allowed for on the FD 209 was claimed for the case. The Disruption and Dismantlement of an NGS gang. Finally, in the last month, the Individual has been credited with the conviction of several subjects.

　　　　All of the above referenced statistical accomplishments have been documented via FD 209.

**Complete a Form 25 "Expense Certification" for all expenses claimed without receipts.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - -
**(CW's only)** On October 24, 2005, AUSA Paul Smyth concurred with this payment (mandatory). **(Attach copy of AUSA concurrence letter sent to USAO.)**

◆◆

BS CIU Form 23 (Revised 11/01/01)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                          **Date:** 09/27/2004

**To:** Boston

**From:** Boston
      Springfield Resident Agency
      **Contact:** SA Mark S. Karangekis  413/735-2304

**Approved By:** O'Reilly Michael

**Drafted By:** Karangekis Mark S

**Case ID #:** 270B-BS-94387  (Pending) -7
           137A-BS-A81318-B (Pending)- 977

**Title:** BS-9416-CW-VG

**Synopsis:** Request participation in otherwise illegal activity.

**Details:** AUTHORIZED ILLEGAL ACTIVITY FROM 9/09/04 TO 12/28/04
(Leave this blank - CIU shall fill in dates)

## SECTION I

**CAPTION:** OPERATION DETHRONE
**FILE #:**  245D-BS-91441-Spring

**CAPTION:**
**FILE #:**

**SUMMARY OF FACTS OF THE INVESTIGATION TO SUPPORT AUTHORIZATION:**

The captioned matter is an on going investigation of the criminal
activities of the members and leaders of the Massachusetts Chapter of
the Almighty Latin King/Queen Nation (Latin Kings).  The criminal
activities include the organized distribution of drugs, and violence
associated to that drug distribution, in several cities throughout
the Commonwealth of Massachusetts.  Individual is in a position to
make controlled purchases of drug and firearm evidence from targets
of investigation.

BS CIU Form 11 (Revised 11/01/01)

270B-BS-94387-7

Exhibit Seven A

**SPECIFIC DESCRIPTION OF AUTHORIZED OTHERWISE ILLEGAL ACTIVITY:**

Possession of heroin, cocaine, subsequent to a controlled purchase of drug evidence.

Possession of firearm subsequent to a controlled purchase of firearm evidence.

**SECTION II**

### FINDING

<u>SUPERVISOR MUST INITIAL NOTES</u>

The approving official(s) have found that the activity is necessary either to:

(A) _____ Obtain information or evidence essential for the success of an investigation that is not reasonably available without such authorization; or

(B) _____ Necessary to prevent death, serious bodily injury or significant damage to property; and

That in either (A) or (B) the benefits to be obtained from the source's participation in the Tier 1 or Tier 2 Otherwise Illegal Activity outweigh the risks involved in this CI/CW's participation.

In making these findings, the approving officials have taken into consideration the following:

1.   The importance of the investigation;

2.   The likelihood that the information or evidence sought will be obtained;

3.   The risk that the CI/CW might misunderstand or exceed the scope of his/her authorization;

4.   The extent of the CI/CW's participation in the Otherwise Illegal Activity;

5.   The risk that the FBI will not be able to supervise closely the CI/CW's participation in the Otherwise Illegal Activity;

6.   The risk of violence, physical injury, property damage, and financial loss to the CI/CW or others; and

7.   The risk that the FBI will not be able to ensure that the CI/CW does not profit from his or her participation in the authorized Otherwise Illegal Activity.

BS CIU Form 11 (Revised 11/01/01)

## SECTION III

The case agent and the approving officials shall take all reasonable steps to:

1.  Supervise closely the illegal activities of the CI/CW;
2.  Minimize the adverse effect of the authorized otherwise illegal activity on innocent individuals;
3.  Ensure that the CI/CW does not profit from his/her participation in the authorized otherwise illegal activity; and
4.  Minimize the CI/CW's participation and ensure that the CI/CW is not the primary source of technical expertise or financial support for the activity for the activity in which he/she will participate.

## SECTION IV

(CW ONLY) AUSA **Paul Smyth** WAS CONTACTED REGARDING THE CW ON **9/27/04** AND CONCURRED WITH THE AUTHORIZED CRIMINAL ACTIVITY AND A LETTER OF CONFIRMATION WAS SENT. **THE FILE COPY OF THIS LETTER MUST BE ATTACHED.**

**AUTHORIZATION:**

SAC/ASAC _____

DATE _____ 9/29/04 _____

BS CIU Form 11 (Revised 11/01/01)

**SECTION V** (ADMONISHMENTS TO CI/CW)

This CI/CW was advised, in person, of the following admonishments and the CI/CW stated he/she fully understood these admonishments:

1. You (CI/CW) are authorized only to engage in the specific conduct set forth in the written authorization described above and not in any other illegal activity;

2. Your (CI/CW) authorization is limited to the time period specified in the written authorization;

3. Under no circumstance may you:

a. Participate in an act of violence;

b. Participate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, alteration, or destruction of evidence);

c. Participate in an act designed to obtain information for the FBI that would be unlawful if conducted by a law enforcement agent (e.g., breaking and entering, illegal wiretapping, illegal opening or tampering with the mail, or trespass amounting to an illegal search); or

d. Initiate or instigate a plan or strategy to commit a federal, state, or local offense.

4. If you are asked by any person to participate in any such prohibited conduct or if you learn of plans to engage in such conduct, you must immediately report the matter to your contact agent.

5. Participation in any prohibited conduct could subject you to full criminal prosecution.

BS CIU Form 11 (Revised 11/01/01)

I was advised of the admonishments listed above, as set forth in Section V of this authorization, by the law enforcement officials whose names appear below. By signing this form, I acknowledge I fully understand and shall abide by these conditions.

CI/CW Signature (Code Name) _Starkist_____ (Date) 9-27-04
CI/CW Code Name Typed:  Starkist


Special Agent Signature _Mark S/K_____ (Date) 9/27/04
Special Agent's Name Typed:  Mark S. Karangekis



Witnessing Law Enforcement
Official Signature _Frank Ott_____ (Date) 9/27/04
Official's Name Typed:  SFO Frank Ott, Deputy Sheriff, HCSD

SSA Approval: _____
SSA's Name Typed:  Michael G. O'Reilly


◆◆

**BS CIU Form 11 (Revised 11/01/01)**

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                              **Date:** 12/28/2004

**To:** Boston

**From:** Boston
          Springfield Resident Agency
          **Contact:** SA Mark S. Karangekis   413/735-2304

**Approved By:** O'Reilly Michael   *MCO/MM*

**Drafted By:** Karangekis Mark S

**Case ID #:** 270B-BS-94387   (Pending) *-26*
              137A-BS-A81318-B (Pending) *-1011*                     (X)

**Title:** BS-9416-CW-VG

**Synopsis:** Request participation in otherwise illegal activity.

**Details:** **AUTHORIZED ILLEGAL ACTIVITY FROM** *3/29/2004* **TO** *3/29/2005*
(Leave this blank - CIU shall fill in dates)

## SECTION I

**CAPTION:**   **OPERATION DETHRONE**
**FILE #:**    **245D-BS-91441-Spring**

**CAPTION:**
**FILE #:**

**SUMMARY OF FACTS OF THE INVESTIGATION TO SUPPORT AUTHORIZATION:**

The captioned matter is an on going investigation of the criminal activities of the members and leaders of the Massachusetts Chapter of the Almighty Latin King/Queen Nation (Latin Kings). The criminal activities include the organized distribution of drugs, and violence associated to that drug distribution, in several cities throughout the Commonwealth of Massachusetts. Individual is in a position to make controlled purchases of drug and firearm evidence from targets of investigation.

Page 1 of 6                          BS CIU Form 11 (Revised 11/01/01)

Exhibit Seven B

*270B-BS-94387-26*

**SPECIFIC DESCRIPTION OF AUTHORIZED OTHERWISE ILLEGAL ACTIVITY:**

Possession of heroin, cocaine, subsequent to a controlled purchase of drug evidence.

Possession of firearm subsequent to a controlled purchase of firearm evidence.

## SECTION II

### FINDING

SUPERVISOR MUST INITIAL NOTES

The approving official(s) have found that the activity is necessary either to:

(A) ~~MGo/M~~ Obtain information or evidence essential for the success of an investigation that is not reasonably available without such authorization; or

(B) _____ Necessary to prevent death, serious bodily injury or significant damage to property; and

That in either (A) or (B) the benefits to be obtained from the source's participation in the Tier 1 or Tier 2 Otherwise Illegal Activity outweigh the risks involved in this CI/CW's participation.

In making these findings, the approving officials have taken into consideration the following:

1. The importance of the investigation;

2. The likelihood that the information or evidence sought will be obtained;

3. The risk that the CI/CW might misunderstand or exceed the scope of his/her authorization;

4. The extent of the CI/CW's participation in the Otherwise Illegal Activity;

5. The risk that the FBI will not be able to supervise closely the CI/CW's participation in the Otherwise Illegal Activity;

6. The risk of violence, physical injury, property damage, and financial loss to the CI/CW or others; and

7. The risk that the FBI will not be able to ensure that the CI/CW does not profit from his or her participation in the authorized Otherwise Illegal Activity.

BS CIU Form 11 (Revised 11/01/01)

## SECTION III

The case agent and the approving officials shall take all reasonable steps to:

1.   Supervise closely the illegal activities of the CI/CW;
2.   Minimize the adverse effect of the authorized otherwise illegal activity on innocent individuals;
3.   Ensure that the CI/CW does not profit from his/her participation in the authorized otherwise illegal activity; and
4.   Minimize the CI/CW's participation and ensure that the CI/CW is not the primary source of technical expertise or financial support for the activity for the activity in which he/she will participate.

## SECTION IV

(CW ONLY) AUSA **Paul Smyth** WAS CONTACTED REGARDING THE CW ON **12/28/04** AND CONCURRED WITH THE AUTHORIZED CRIMINAL ACTIVITY AND A LETTER OF CONFIRMATION WAS SENT.  **THE FILE COPY OF THIS LETTER MUST BE ATTACHED.**

## AUTHORIZATION:

SAC/ASAC  _R. Hea Lannin_

DATE  _12/29/04_

BS CIU Form 11 (Revised 11/01/01)

**SECTION V** (ADMONISHMENTS TO CI/CW)

This CI/CW was advised, in person, of the following admonishments and the CI/CW stated he/she fully understood these admonishments:

1. You (CI/CW) are authorized only to engage in the specific conduct set forth in the written authorization described above and not in any other illegal activity;

2. Your (CI/CW) authorization is limited to the time period specified in the written authorization;

3. Under no circumstance may you:

    a.  Participate in an act of violence;

    b.  Participate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, alteration, or destruction of evidence);

    c. Participate in an act designed to obtain information for the FBI that would be unlawful if conducted by a law enforcement agent (e.g., breaking and entering, illegal wiretapping, illegal opening or tampering with the mail, or trespass amounting to an illegal search); or

    d.  Initiate or instigate a plan or strategy to commit a federal, state, or local offense.

4.  If you are asked by any person to participate in any such prohibited conduct or if you learn of plans to engage in such conduct, you must immediately report the matter to your contact agent.

5.  Participation in any prohibited conduct could subject you to full criminal prosecution.

BS CIU Form 11 (Revised 11/01/01)

I was advised of the admonishments listed above, as set forth in Section V of this authorization, by the law enforcement officials whose names appear below. By signing this form, I acknowledge I fully understand and shall abide by these conditions.

CI/CW Signature (Code Name) _____ (Date) 12/29/04
CI/CW Code Name Typed: **Starkist**

Special Agent Signature _____ (Date) 12/28/04
Special Agent's Name Typed: **Mark S. Karangekis**

Witnessing Law Enforcement
Official Signature _____ (Date) 12/29/04
Official's Name Typed: SFO Frank Ott, Deputy Sheriff, HCSD

SSA Approval: _____
SSA's Name Typed: Michael G. O'Reilly

♦♦

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                              **Date:** 03/29/2005

**To:** Boston

**From:** Boston
         Springfield Resident Agency
         **Contact:** SA Mark S. Karangekis  413/735-2304

**Approved By:** O'Reilly Michael G

**Drafted By:** Karangekis Mark S:MSK

**Case ID #:** 270M-BS-94387    (Pending) — 50
             137A-BS-A81318-B       (Pending) – 1046

**Title:** BS-9416-C

**Synopsis:** Request participation in otherwise illegal activity.

**Details:** AUTHORIZED ILLEGAL ACTIVITY FROM 3/30/05 TO 6/28/05
(Leave this blank - CIU shall fill in dates)

## SECTION I

**CAPTION:** Operation Dethrone
**FILE #:** 245D-BS-91441-Spring

**CAPTION:**
**FILE #:**

**SUMMARY OF FACTS OF THE INVESTIGATION TO SUPPORT AUTHORIZATION:**

The Individual has been involved in making controlled purchases of
drug evidence from subjects of investigation since September of 2004,
and to date, has incriminated over thirty five subjects in violations
of Title 21 and Title 18.  The case has been presented to the Federal
Grand Jury, and Indictments are pending.  Due to the volume of the
case, the United States Attorney's Office is not in a position to
take to the case to arrest until the first week of May, 2005.  As
such, the delay has allowed the targeting of additional subjects
involved at various levels.  In addition, probable cause for search
warrants on target locations must be freshened throughout April.

Page 1 of 5                      BS CIU Form 11 (Revised 11/01/01)

A: 08103-04 EC

Exhibit Seven C

270M- BS-94387-50

**SPECIFIC DESCRIPTION OF AUTHORIZED OTHERWISE ILLEGAL ACTIVITY:**

Controlled purchase of drug and firearms evidence, necessitating the possession of cocaine and firearm evidence.

**SECTION II**

FINDING

SUPERVISOR MUST INITIAL NOTES

       The approving official(s) have found that authorization is necessary either to:

       **(A)** _____ Obtain information or evidence essential for the success of an investigation that is not reasonably available without such authorization; or

       **(B)** _____ Necessary to prevent death, serious bodily injury or significant damage to property; and

       That in either (A) or (B) the benefits to be obtained from the source's participation in the Tier 1 or Tier 2 Otherwise Illegal Activity outweigh the risks involved in this CI/CW's participation.

       In making these findings, the approving officials have taken into consideration the following:

       1.    The importance of the investigation;

       2.    The likelihood that the information or evidence sought will be obtained;

       3.    The risk that the CI/CW might misunderstand or exceed the scope of his/her authorization;

       4.    The extent of the CI/CW's participation in the Otherwise Illegal Activity;

       5.    The risk that the FBI will not be able to supervise closely the CI/CW's participation in the Otherwise Illegal Activity;

       6.    The risk of violence, physical injury, property damage, and financial loss to the CI/CW or others; and

       7.    The risk that the FBI will not be able to ensure that the CI/CW does not profit from his or her participation in the authorized Otherwise Illegal Activity.

BS CIU Form 11 (Revised 11/01/01)

## SECTION III

The case agent and the approving officials shall take all reasonable steps to:

1.   Supervise closely the illegal activities of the CI/CW;
2.   Minimize the adverse effect of the authorized otherwise illegal activity on innocent individuals;
3.   Ensure that the CI/CW does not profit from his/her participation in the authorized otherwise illegal activity; and
4.   Minimize the CI/CW's participation and ensure that the CI/CW is not the primary source of technical expertise or financial support for the activity for the activity in which he/she will participate.

## SECTION IV

(CW ONLY) AUSA **(NAME)** WAS CONTACTED REGARDING THE CW ON **(DATE)** AND CONCURRED WITH THE AUTHORIZED CRIMINAL ACTIVITY AND A LETTER OF CONFIRMATION WAS SENT.  **THE FILE COPY OF THIS LETTER MUST BE ATTACHED.**

**AUTHORIZATION:**

SAC/ASAC _Thomas Powers_

DATE _3 . 30 . 05_

BS CIU Form 11 (Revised 11/01/01)

**SECTION V** (ADMONISHMENTS TO CI/CW)

This CI/CW was advised, in person, of the following admonishments and the CI/CW stated he/she fully understood these admonishments:

1. You (CI/CW) are authorized only to engage in the specific conduct set forth in the written authorization described above and not in any other illegal activity;

2. Your (CI/CW) authorization is limited to the time period specified in the written authorization;

3. Under no circumstance may you:

    a. Participate in an act of violence;

    b. Participate in an act that constitutes obstruction of justice (e.g., perjury, witness tampering, alteration, or destruction of evidence);

    c. Participate in an act designed to obtain information for the FBI that would be unlawful if conducted by a law enforcement agent (e.g., breaking and entering, illegal wiretapping, illegal opening or tampering with the mail, or trespass amounting to an illegal search); or

    d. Initiate or instigate a plan or strategy to commit a federal, state, or local offense.

4. If you are asked by any person to participate in any such prohibited conduct or if you learn of plans to engage in such conduct, you must immediately report the matter to your contact agent.

5. Participation in any prohibited conduct could subject you to full criminal prosecution.

BS CIU Form 11 (Revised 11/01/01)

        I was advised of the admonishments listed above, as set
forth in Section V of this authorization, by the law enforcement
officials whose names appear below.  By signing this form, I
acknowledge I fully understand and shall abide by these conditions.


CI/CW Signature (Code Name) _Starkist_____ (Date) _3/25/05_
CI/CW Code Name Typed:  STARKIST


Special Agent Signature _____ (Date) _3/25/05_
Special Agent's Name Typed:  MARK S. KARANGEKIS



Witnessing Law Enforcement
Official Signature _Frank Ott_____ (Date) _3/25/05_
Official's Name Typed:  FRANK OTT

SSA Approval: _____ 3/29/05
SSA's Name Typed:  MICHAEL G. O'Reilly


◆◆

BS CIU Form 11 (Revised 11/01/01)