UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| v.  ] | No.  05-CR-30042-MLW |
| ] | |
| CESAR CRUZ and ] | |
| RICARDO DIAZ ] | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
**ITS MOTION TO DISMISS WITHOUT PREJUDICE**

The United States hereby submits this memorandum in support of its motion to dismiss without prejudice, pursuant to Rule 48(a) of the *Federal Rules of Criminal Procedure*.

**Introduction**

On November 30, 2006, the defendants moved to dismiss this matter, in part because of the government's inadvertent late disclosure of documents during trial in September 2006. Those documents were from the Federal Bureau of Investigation's ("FBI") cooperating witness file for Julian Rios ("Rios").  After November 30 the government began preparing its memorandum in opposition to the defendants' motion.  While talking to its agents, on December 13, 2006, counsel for the government was told for the first time of the existence of a confidential informant file for Rios – separate from Rios's cooperating witness file.  A review of the contents of that file the next morning confirmed that it predates the cooperating witness file and contains additional documents which had not been provided to the defendants but which should have been produced.  Government counsel had never been advised of the existence of this file, and in fact had reason to believe it did not exist.

Separately, in late November 2006, Rios, who is not in custody and is living elsewhere in the United States, stopped contacting the FBI. In the ensuing weeks local police and federal agents searched for him, and they continue to do so. On or about December 11, 2006, the FBI received a phone call from Rios, but could not verify his location, and he has not been in contact since.

As a result of these developments, the government now has a case in which there have been two inadvertent, untimely disclosures of *Jencks* material and which, at present, appears unprovable (beyond a reasonable doubt) because of the absence of the government's cooperating witness. The government should be clear that it does not agree with the grounds for dismissal as stated in defendants' motion; the government believes they have misinterpreted the Attorney General Guidelines and documents in the FBI's cooperating witness file, and state no other valid grounds for dismissal. But at this juncture the government cannot in good conscience keep these two defendants under indictment, in a case in which the government has failed to meet core constitutional and statutory disclosure obligations and, regardless of those errors, may well be unable to prove the case to a jury.

Consequently the government moves for dismissal, though without prejudice: the government does not seek to minimize its errors here, but under relevant precedent these errors do not warrant dismissal with prejudice. Dismissals with prejudice should be reserved for those "rare and extreme" circumstances involving bad faith by the government and substantial prejudice to the defense. However inexcusable the government's mistakes, they were unintentional, and it does not appear that defendants would be substantially prejudiced in a retrial of this matter. That said, the government has told counsel – and hereby represents to the Court –

that it will not re-charge these defendants for the conduct underlying this indictment.

The government has conferred with counsel for the defendants and they have assented to dismissal on these terms.

## ARGUMENT

I. **THE COURT SHOULD GIVE LEAVE FOR THE DISMISSAL BECAUSE THE GOVERNMENT HAS PROFFERED FACTS SUFFICIENT FOR THE COURT TO MAKE AN INFORMED DECISION THAT DISMISSAL IS NOT CLEARLY CONTRARY TO THE PUBLIC INTEREST**

Rule 48(a) provides, "The government may, *with leave of court*, dismiss an indictment, information, or complaint.  The government may not dismiss the prosecution during trial without the defendant's consent."  *Fed. R. Crim*. P. 48(a) (emphasis added).  Judicial review of government requests for dismissal, however, is extremely narrow.  *See, e.g., United States v. Perez-Franco*, 873 F.2d 455, 460 (1st Cir. 1989) (in dicta, describing discretion to deny motion as "narrowly interpreted by the courts"); *In re: United States of America*, 345 F.3d 450, 453-54 (7th Cir. 2003) ("We are unaware, however, of any appellate decision that actually upholds a denial of a motion to dismiss a charge on such a basis [*i.e*., because of "bad faith" or motion is "contrary to public interest"]." )[1]  Assuming the government presents its factual basis for dismissal, the Court should grant the motion, especially where it is uncontested.  *See, e.g., United States v. Tahsir*, No. 04-CR-10037-MLW, slip op. at 1-2 (March 25, 2004) (Wolf, J., discussing court's role when government seeks dismissal under Rule 48(a)).

The Supreme Court has acknowledged that some courts interpret the phrase "with leave of the court" to mean that a judge may deny an uncontested  government motion to dismiss if it is

---

[1] The Seventh Circuit questioned whether discretion to deny a motion to dismiss even exists.  *See id.* at 453-54.

"prompted by considerations clearly contrary to the public interest." *Rinaldi v. United States*, 434 U.S. 22, 29, n.15 (1977) (*per curiam*). However, the Court chose not to rule on whether that would be an appropriate use of judicial discretion under Rule 48(a). *Id* at n.15; *see also Tahsir*, No. 04-CR-10037-MLW, slip op. at 1-2 (collecting cases acknowledging discretion). Courts that have since considered the use of "public interest" discretion have made clear that it is quite circumscribed:

> Since the judicial check on the prosecutorial power is a very limited one, a prosecutor's motion to dismiss must be granted unless "clearly contrary to manifest public interest." [citations omitted] Judicial discretion becomes extremely limited in circumstances where the prosecutor seeks to dismiss the indictment with prejudice and the defendant joins the motion.

*United States v. Martin*, 287 F.3d 609, 623 (7th Cir. 2002); *see also United States v. Hamm*, 659 F.2d 624, 628 (5th Cir. 1981) ("The district court may not deny a government motion to dismiss a prosecution, consented to by the defendant, except in those extraordinary cases where it appears the prosecutor is motivated by considerations clearly contrary to the manifest public interest.").[2] The government does not need to "prove" that dismissal is in the public interest; it must merely provide sufficient reasons to allow the Court to intelligently exercise its limited discretion. *See United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1983); *Hamm*, 659 F.2d at 631, n. 23. The Court should resist second guessing the government's evaluation. *Salinas*, 693 F.2d at 351.

In this case, a dismissal without prejudice is not "clearly contrary to public interest."

---

[2] *See also United States v. Jacobo-Zavala*, 241 F.3d 1009, 1013 (8th Cir. 2001) ("The court is limited to assessing whether the government's motion is contrary to manifest public interest because it is not based in the prosecutor's good faith discharge of her duties."); *United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000) (uncontested Rule 48(a) motion should be granted unless it "would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith.").

First, in *Rinaldi*, the Supreme Court observed that "[t]he principal object of the 'leave of court' requirement [in Rule 48] is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi*, 434 U.S. at 29, n.15. Here the government has made clear that it will not re-charge the defendants for the conduct underlying this case. Second, while the public has a strong interest in the government firmly prosecuting crime, the public has an equally strong interest in the government being held to high standards as it does so. It would not be fair to keep these defendants under indictment in the unique circumstances presented here. Moreover, the defense consents to dismissal on this basis.

## II.    DISMISSAL WITHOUT PREJUDICE, AS OPPOSED TO WITH PREJUDICE, IS SUFFICIENT

Events in this case have prompted the government to take the unusual step of agreeing to dismissal but, despite its errors, the government respectfully asserts that nothing in this case warrants dismissal with prejudice.

### A.    Events Related to Production of Documents

Significant discovery was given to the defendants before trial.[3] The government also repeatedly disclosed information about Rios's prior misconduct, including assaults; stabbings; shootings; domestic assault; drug dealing; failure to pay taxes; failure to pay child support; apparent mis-identifications by Rios; allegations that Rios had himself sold drugs while operating

---

[3] This included, but was not limited to, automatic discovery under Local Rule 116; all recordings involving CRUZ or DIAZ; grand jury testimony of Special Agent Karangekis related to all cases involving the use of Rios as a CW; FBI 302 reports by Karangekis related to all other cases involving Rios; and payment information and other information regarding Rios that had been collected from a review of Rios's CW file.

as a CW; and allegations that during the investigation Rios had coerced two targets to sell drugs to him. The government also made an *ex parte* filing under seal in September 2006 to ask for the Court's judgment on whether it should disclose new information it had obtained about Rios. *See Sealed Filing* (Sept. 15, 2006).

During his trial testimony on September 26, 2006, however, Agent Karangekis referred to an "opening memo" he had written regarding the use Rios as a CW – a document the government had not disclosed. The Court ordered the government to produce the opening memo and re-review its files for any other discoverable material that had not been previously disclosed. Counsel for the government immediately re-reviewed the FBI's CW file (though now it is aware that it failed to review the separate CI file) and admitted to the Court, by letter that night, that it found documents that should have been disclosed before trial. The documents were then produced.[4] In an abundance of caution, the government also produced *in camera* a packet of Form 209s; the government did not believe the forms were discoverable, but disclosed them to the Court for an independent determination. The next day a mistrial was granted on separate grounds, "reinforced" by the government's late disclosures, and a retrial was ultimately rescheduled for three months later.

Finally, as discussed in the accompanying affidavit of Acting U.S. Attorney Michael K. Loucks, on December 13, 2006, the line prosecutors learned for the first time that the FBI had a separate confidential informant file (as opposed to the cooperating witness file) for Rios. The government obtained and reviewed the file the next morning, made the decision to assent to

---

[4] Despite the late disclosure, most of the documents produced during the trial were cumulative in nature and contained no new information which would substantially change the complexion of the defense.

dismissal, and alerted the Court of both developments that day.

### B. Even If the Government Were Opposing Dismissal, Nothing in the Events Summarized above Would Warrant Dismissal with Prejudice

The government's late disclosures – both at trial and now – do not necessitate dismissal with prejudice. That sanction is consistently reserved for narrow circumstances involving intentional prosecutorial misconduct. *See, e.g., United States v. Houlihan*, 92 F.3d 1271, 1291 (1st Cir. 1996) (government failed to produce grand jury testimony and prosecutor's notes; court declines to invoke supervisory powers, noting that dismissal of case or vacating conviction should only happen in cases involving "plain prosecutorial misconduct" and "cognizable prejudice"); *United States v. Josleyn*, 99 F.3d 1182, 1196 (1st Cir. 1996) (government disclosed witness's letters months late; affirms lower court refusal to dismiss because sanction would be "grossly disproportionate both to the prosecution's nonfeasance and any prejudice to the defense").

Events in this case, however inexcusable, do not meet that standard. While the government clearly failed to timely disclose documents it should have disclosed, these failures were unintentional. Throughout this case the government has regularly produced extremely damaging material regarding Rios, and the FBI has readily assisted in that endeavor. The government and FBI had no plausible reason to withhold anything in Rios's files; the information about Rios the government timely disclosed was far more damaging than anything contained in the documents that were produced late.

Clearly none of this excuses the government's failures, but lack of bad faith is a crucial distinction for purposes of deciding whether dismissal with prejudice is appropriate. The First

Circuit has consistently held – in cases involving late disclosures more damaging than those at issue here – that where government error is unintentional courts should not use their supervisory powers to dismiss a case with prejudice. *See, e.g., United States v. Flemmi,* 283 F.Supp.2d 400, 409 (D. Mass. 2003) ("In most of the cases in which a trial court has taken it upon itself to enter a *sua sponte* dismissal of an indictment with prejudice as a sanction for perceived prosecutorial misconduct, or to achieve the outcome deemed just, the decision has been reversed on appeal.").[5]

The government is of course aware that there is more to consider in this analysis; in *United States v. Diabate*, for example, this Court dismissed a case without prejudice but noted that, in light of other cases in which the government had committed similar mistakes, dismissal with prejudice might have been warranted, "to try to send a stronger message." 90 F.Supp.2d 140, 150 (D.Mass. 2000). *Diabate*, however, involved problems more serious than in this case – the Court discovered on the eve of trial that an agent destroyed his notes, and the government failed to produce three signed documents (rental agreements) that were extremely important for

---

[5] *See also, .e.g., United States v. Medina*, ___ F.3d ___, 2003 WL 22016375, **2-3, n.4 (1st Cir. 2003) (refusing to reverse convictions where, during trial, testimony revealed that government had failed to disclose impeachment evidence; court notes "[t]he district court found no evidence the Government acted in bad faith"); *United States v. Arboleda*, 929 F.2d 858, 864 (1st Cir. 1991) (affirming refusal to mistry case where failure to produce impeachment material became clear at trial; noting that "no allegations that the government delayed production in bad faith were made by the defendants to the district court"); *United States v. Devin*, 918 F.2d 280, 290 (1st Cir. 1990) (government failed to timely disclose psychiatric treatment of witness; court denies mistrial, in part because "[d]efendant does not claim that the information was withheld in bad faith or deliberately suppressed"); *United States v. Hemmer*, 729 F.2d 10, 13 (1st Cir. 1984) (failure to timely disclose FBI reports and forensic analysis; court notes that lower court "found no bad faith or other willful misconduct" by the prosecutor); *United States v. Richman*, 600 F.2d 286, 291-92 (1st Cir. 1979) (upholding lower court refusal to dismiss where government failed to timely disclose that government witnesses were paid informants; court notes absence of "deliberate wrongdoing," and observes that "the delay was the product, not of willing misrepresentations or bad faith, but of a negligent misunderstanding by the government attorney").

the defense case. *See id.* at 146. Moreover, unlike the confidential informant file in this case, it appears that the law enforcement agency's failure to alert the U.S. Attorney's Office to the existence of the rental agreement documents was mildly suspicious. *See id.* Finally, in *Diabate* it appears the government resisted dismissal on any grounds. Here the government notified the defense and the Court that the case may no longer be viable due to a missing witness, and agreed to dismissal, without prejudice, coupled with a promise not to re-prosecute. The government respectfully states that dismissal with prejudice is not necessary to send a message – once the government was told about the confidential informant file, it became clear that the government had not met its obligation to the law, the parties or the public.

## **CONCLUSION**

The government respectfully moves to dismiss this matter without prejudice.

                                          Respectfully submitted,

By: _____
      Michael K. Loucks
      First Assistant United States Attorney

Date:  December 19, 2006